## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **Earth Island Institute,** | **Civil Action No. 21-1926** |
| **Plaintiff,** | |
| **v.** | |
| **The Coca-Cola Company,** | |
| **Defendant.** | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant The Coca-Cola Company ("Coca-Cola" or "Defendant") hereby removes this action pursuant to 28 U.S.C. §§ 1332(a); 1367; 1441(a), (b); and 1446 from the Superior Court of the District of Columbia, Civil Division to the United States District Court for the District of Columbia.  The grounds for removal are set forth below.

## I. BACKGROUND AND PROCEDURAL REQUIREMENTS

1.      On June 8, 2021, Plaintiff Earth Island Institute ("Plaintiff") commenced this action against Coca-Cola in the Superior Court for the District of Columbia as Civil Action No. 2021 CA 1846 B.  Coca-Cola was served on June 18, 2021.  This Notice of Removal is timely because it is filed within 30 days of service.  *See* 28 U.S.C. § 1446(b).

2.      In accordance with 28 U.S.C. § 1446(a), a copy of the Complaint, the Summons, all documents filed with the District of Columbia Superior Court, and the Superior Court Docket Report are attached as **Exhibit A**.  These documents comprise all process, pleadings, and orders filed to date in this action.

3.      Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly give written notice of this Notice of Removal to Plaintiffs' counsel and file a copy of the same with the Clerk of the

Superior Court of the District of Columbia, Civil Division.

## II. BACKGROUND

4.      Plaintiff, a public-interest organization based in Berkeley, California, brings this suit on behalf of itself, its members, and the general public of the District of Columbia against Coca-Cola, a Delaware corporation that is headquartered in Georgia.  Compl. ¶¶ 137, 147, 154.[1]

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), as the parties are completely diverse and Plaintiff seeks injunctive relief that, if granted, would cost well in excess of $75,000 to implement.

6.      Plaintiff alleges that Coca-Cola has engaged in "unlawful trade practices" in violation of the D.C. Consumer Protection Procedures Act ("D.C. CPPA"), D.C. Code § 28-3901 *et seq.*, through "misleading representations and omissions" concerning Coca-Cola's sustainability efforts and its contribution to plastic pollution.  Compl.  ¶¶ 18, 156.  Plaintiff contends that various public statements on Coca-Cola's website, social media accounts, and third-party websites portray Coca-Cola as an "environmentally conscious company that works to protect the interests of the planet" when, according to Plaintiff, Coca-Cola "produces an incredible amount of plastic pollution" and "has not taken significant action to take responsibility" for its plastic waste.  *Id.* ¶¶ 31, 69–71.

7.      Plaintiff also takes issue with efforts undertaken by Coca-Cola and other large beverage companies to collect bottles, reduce ocean pollution, and boost recycling programs. According to Plaintiff, these programs are insufficient to address plastic pollution and "fail[] to acknowledge" that "a significant portion of recyclable materials . . . end up in landfills." *Id.*  ¶¶ 38,

---

[1] The Complaint incorrectly alleges that Coca-Cola is incorporated under the laws of Georgia. *See* Compl. ¶ 147.  Coca-Cola is incorporated in the State of Delaware.  *See* **Exhibit B** (Form 10-Q (Apr. 27, 2021)).

46–49, 56, 70–74, 116.

8.      Plaintiff acknowledges that "various factors" contribute to low recycling rates, including the economics of plastic production, the decisions of local governments to reduce or eliminate recycling programs, and China's decision to bar entry of recyclable materials from the United States. *Id.* ¶¶ 85–89.  Notwithstanding these "factors" and despite the reality that a solution to the global pollution problem eludes corporations and governments alike, Plaintiff singles out Coca-Cola for allegedly failing to develop a "strategy to meaningfully reduce its plastic pollution footprint." *Id.* ¶ 96.

9.      Plaintiff also claims that in "marketing its products as unqualifiedly 'recyclable,'" Coca-Cola "obfuscates" the challenges to recycling and how these challenges may affect the "sustainability" of its products. *Id.* ¶ 122.

10.      Plaintiff makes generalized allegations of "harm to the general public of the District of Columbia." *Id.* ¶ 149.

11.      Pursuant to the D.C. CPPA, Plaintiff seeks "a declaration that Coca-Cola's conduct is in violation of the CPPA" and an injunction that bars "conduct" that violates the CPPA. *Id.* ¶ 27, Prayer for Relief.  Plaintiff also seeks "costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law." *Id.*

## III. THIS COURT HAS JURISDICTION UNDER 28 U.S.C. § 1332(A)

12.      "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . ."  28 U.S.C. § 1441(a). This action is removable under § 1441 because the district courts of the United States have original jurisdiction under 28 U.S.C. § 1332(a), which confers jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000," and the parties are from different states.

This case satisfies both requirements.

### A.  The Parties Are Completely Diverse.

13.  Coca-Cola is headquartered in Georgia and incorporated in Delaware, and Plaintiff is a California organization, so there is no question that the parties are completely diverse.  Compl. ¶¶ 137, 147.

### B.  The Amount in Controversy Exceeds $75,000.

14.  A party seeking to remove an action to federal court need make only a "plausible allegation" that the amount in controversy exceeds the jurisdictional threshold.  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold"; evidence is required only if "plaintiff contests, or the court questions, the defendant's allegation."); *Beyond Pesticides v. Dr Pepper Snapple Grp., Inc.*, 322 F. Supp. 3d 119, 121 (D.D.C. 2018).

### (1)  *The Cost of Injunctive Relief Exceeds $75,000*

15.  This suit satisfies the $75,000 jurisdictional threshold because Plaintiff seeks sweeping injunctive relief—to "end the lawful conduct directed at D.C. consumers"—that, if granted, would cost Coca-Cola more than $75,000 to implement.  Compl. ¶ 27 ("Earth Island Institute seeks to end the unlawful conduct directed at D.C. consumers.").[2]

16.  Where, as here, a plaintiff seeks injunctive relief, the amount in controversy is "measured by the value of the object of the litigation."  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977).  In the District of Columbia, courts measure the amount in controversy

---

[2] Coca-Cola does not concede that Plaintiff is entitled to the relief it seeks.  The plaintiff's "claim, whether well or ill founded in fact, fixes the right of the defendant to remove."  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).

either by the "value of the right that plaintiff seeks to enforce or to protect" or "the cost to the defendant[] to remedy the alleged" wrongdoing. *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978); *GEO Specialty Chems., Inc. v. Husisian*, 951 F. Supp. 2d 32, 39 (D.D.C. 2013) ("[T]he value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant.").

17.    Plaintiff's requested "injunction against the use of the unlawful trade practice" would have widespread effects across Coca-Cola's public-facing statements and its product portfolio, and the cost to comply would vastly exceed the jurisdictional threshold. *See* Compl. ¶ 27; *Organic Consumers Ass'n v. Hain Celestial Grp., Inc.*, 285 F. Supp. 3d 100, 102, n.2 (D.D.C. 2018) (diversity jurisdiction proper in CPPA case where plaintiff sought "corrective advertising and revised labeling").

18.    The Complaint challenges as "misleading" Coca-Cola's public communications across a variety of platforms, including social media, communications to investors, and Coca-Cola's website. Compl. ¶¶ 32–36. As set forth in the attached Declaration of Alpa Sutaria, Coca-Cola would incur well in excess of $75,000 in expenses to remove the challenged statements, or to revise them with corrective statements. These changes would be far from straightforward. Among other things, Coca-Cola would have to redesign its existing media strategy to remove references to its sustainability efforts; remove or modify references to "recycling" or the recyclability of products across all the marketing and labeling materials in its portfolio; and possibly, make other corrective statements. *See* **Exhibit C**.

(2)    *The non-aggregation principle does not apply.*

19.    As Plaintiff expressly alleges, this is "not a class action" or "an action brought on behalf of any specific consumer." Compl. ¶ 26. Because the case involves only one plaintiff, it does not implicate the non-aggregation principle, which generally prohibits courts from aggregating

the "separate and distinct claims of **two or more plaintiffs**" when calculating the amount in controversy. *Snyder v. Harris*, 394 U.S. 332, 335 (1969) (emphasis added).

20.     Even if the Complaint were interpreted to include additional plaintiffs—despite its express disclaimers to the contrary—the anti-aggregation principle still would not apply.   The injunctive relief Plaintiff seeks—to enjoin allegedly misleading advertising—is a "common and undivided interest," a widely recognized exception to the non-aggregation principle.   *Id.* (non-aggregation does not apply where "two or more plaintiffs unite to enforce a single title or right in which they have a common or undivided interest"); *Nat'l Welfare Rights Org. v. Weinberger*, 377 F. Supp. 861, 866 (D.D.C. 1974) ("[A] common and undivided claim exists when the adversary of the class has no interest in how the claim is to be distributed among the class members.").

21.     Courts in this District routinely assert federal jurisdiction over CPPA cases that seek to further a "common and undivided" interest and hold that the non-aggregation principle does not apply.   *See Beyond Pesticides*, 322 F. Supp. 3d at 122 (diversity jurisdiction proper where plaintiff sought disgorgement of profits from allegedly mislabeled apple sauce products); *Williams v. Purdue Pharm. Co.*, No. 02-0556 (RMC), 2003 U.S. Dist. LEXIS 19268, at *12–20 (D.D.C. Feb. 27, 2003) (disgorgement under the CPPA is a common and undivided claim that would exceed $75,000); *see also Mostofi v. Network Capital Funding Corp.*, 798 F. Supp. 2d 52, 55 (D.D.C. 2011) (recognizing that CPPA claims seeking disgorgement could be aggregated).[3]

---

[3] The D.C. Circuit has yet to address the precise question of how to calculate the cost of an injunction in a CPPA case where a sole plaintiff claims not to bring claims on behalf of a class or "on behalf of any specific consumer."   Lower courts in the District have concluded that the cost of a CPPA injunction must be prorated across the potential beneficiaries of the injunction.   *See, e.g.*, *Food & Water Watch, Inc. v. Tyson Foods, Inc.*, No. 19-cv-2811 (APM), 2020 U.S. Dist. LEXIS 38232, at *9 (D.D.C. Mar. 5, 2020).   Such an approach, however, would be illogical on these facts given that there are no potential "class" members.   To the extent there are other potential beneficiaries of Plaintiff's requested injunction, as detailed above, their interest is common and undivided, and is therefore not subject to the anti-aggregation rule.

22.     Courts outside this Circuit have similarly recognized that injunctive relief to correct allegedly misleading advertising constitutes a "common and undivided" interest.  Indeed, several courts have asserted federal jurisdiction in such circumstances because they reason that the cost to defendant would "be the same no matter how many plaintiffs obtained that award."  *Tires Prods. Liab. Litig. v. Bridgestone/Firestone, Inc. (In re Bridgestone/Firestone, Inc.)*, 256 F. Supp. 2d 884, 896 (S.D. Ind. 2003) (injunction against "affirmative misrepresentations in the defendant's advertising" was a common and undivided interest); *see also Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 898 (10th Cir. 2006) ("requested relief would require [defendant] to make significant changes to its business practices . . . [and] the compliance cost to any single plaintiff exceeds the requisite amount in controversy"); *Adoure v. Gillette Co.*, No. 05-11177-DPW, 2007 U.S. Dist. LEXIS 2641, at *20 (D. Mass. Jan. 11, 2007) (diversity jurisdiction based on the "cost of corrective advertising in the California market alone" which would exceed $75,000 threshold); *Loizon v. SMH Societe Suisse de Microelectronics*, 950 F. Supp. 250, 254 (N.D. Ill. 1996) (injunctive relief in the form of advertising to warn the public about possible radiation amounted to an "undivided interest").[4]

---

[4] Several other courts have likewise concluded that injunctive relief satisfies the "common and undivided" exception to the non-aggregation principle.  *See In re GMC*, No. MDL 04-1600, 2005 U.S. Dist. LEXIS 37171, at *21–22 (W.D. Okla. July 6, 2005) ("The parties have demonstrated that the cost to GM of complying with an injunction mandating an engine redesign effort or halting GM's sales of the defective engines would exceed the jurisdictional minimum."); *Hoffman v. Vulcan Materials Co.*, 19 F. Supp. 2d 475, 483 (M.D.N.C. 1998) ("[B]ecause the defendant will sustain this loss even if only one plaintiff were to obtain the injunction, this is a case where plaintiffs have an undivided interest in the injunction."); *Earnest v. Gen. Motors Corp.*, 923 F. Supp. 1469, 1472–73 (N.D. Ala. 1996) (because the equitable relief sought "would benefit the putative class as a whole and not just any individual plaintiff," each plaintiff "has a common interest in the injunctive and declaratory relief"); *Edge v. Blockbuster Video, Inc.*, 10 F. Supp. 2d 1248, 1251–52 (N.D. Ala. 1997) (plaintiffs had a common and undivided interest in an injunction to "prohibit the defendants from continuing to charge 'excessive' late fees against the members of the        class"        because        it        would        deter        a        course ofhttps://advance.lexis.com/document/?pdmfid=1000516&crid=0838084e-a590-4fb3-93fb-

23.     The injunction Plaintiff seeks in this case is a quintessential "common and undivided" claim.  Coca-Cola would incur the same expense to remove and revise its communications and advertisements and develop a compliant advertising strategy regardless of whether Plaintiff demanded such action alone or "on behalf of the general public."

> *(3)*     *An estimate of reasonable attorneys' fees further supports diversity*
> *jurisdiction.*

24.     Under the D.C. CPPA, attorneys' fees may be awarded to the prevailing party based on the amount of time reasonably expended, *see* D.C. Code § 28-3905(k)(2)(B), and in this District, attorneys' fees "may be counted towards establishing a jurisdictional amount when they 'are provided for by . . . statute in controversy.'"  *Parker-Williams v. Charles Tini & Assocs., Inc.*, 53 F. Supp. 3d 149, 153 (D.D.C. 2014) (quoting *Srour v. Barnes*, 670 F. Supp. 18, 22 n.3 (D.D.C. 1987)).

25.     Plaintiff seeks "an order granting Plaintiff costs and disbursements, including reasonable attorneys' fees and expert fees."  Compl., Prayer for Relief.  Attorneys' fee awards under the CPPA routinely exceed the $75,000 jurisdictional threshold, as CPPA actions, such as this one, often require hundreds of hours of work by plaintiff's counsel.  Courts in CPPA cases have awarded fees and expenses that range into the hundreds of thousands of dollars.  *See, e.g.*, *Williams v. First*

---

0bbdc318a4d0&pddocfullpath=%2Fshared%2Fdocument%2Fcases%2Furn%3AcontentItem%3
A430F-PHK0-0038-Y03T-00000-
00&pdcontentcomponentid=6416&pdshepid=urn%3AcontentItem%3A7XWX-4HM1-2NSD-
N0PJ-00000-00&pdteaserkey=sr6&pditab=allpods&ecomp=ydgpk&earg=sr6&prid=8d35e35d-
9f42-42dc-bc75-1b68b407a328 conduct as a whole and would inure to the "public benefit -- the
collective good"); *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 836 (E.D. Mich. 1999)
("Plaintiffs seek injunctive relief that will benefit the class as a whole. Defendants' costs of
compliance do not depend upon the size of the class or the identity of its members. Accordingly,
it is based upon a common and undivided interest and constitutes an integrated claim; its entire
value may be considered when determining whether the amount-in-controversy requirement for
diversity jurisdiction is satisfied, and that requirement is satisfied here.").

*Gov't Mortg. & Inv'rs Corp.*, 225 F.3d 738, 745–47 (D.C. Cir. 2000) ($199,340); *Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 20 (D.D.C. 2014) ($854,623.90); *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 289 (D.D.C. 2009) ($453,885.31); *Dist. Cablevision L.P.* v. *Bassin*, 828 A.2d 714, 718 (D.C. 2003) ($425,916.25); *Jackson v. Byrd*, No. 01-ca-825, 2004 WL 3249692, at *4 (D.C. Super. Ct. Sept. 2, 2004) ($196,000). These cases are representative of the substantial fees Plaintiff could recover if it prevails and further support removal on diversity jurisdiction grounds.

26.     In sum, because the parties are "completely diverse" and the amount in controversy plausibly exceeds $75,000, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

## COCA-COLA HAS COMPLIED WITH ALL PREREQUISITES FOR REMOVAL

27.     For all of the foregoing reasons, this action is properly removed to this Court.

28.     Coca-Cola reserves the right to amend or supplement this Notice of Removal, and reserves all rights and defenses, including those available under Federal Rule of Civil Procedure

WHEREFORE, Defendant Coca-Cola respectfully removes this action from the Superior Court of the District of Columbia (Case No. 2021 CA 001846 B), to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being contemporaneously filed with the Clerk of the District of Columbia Superior Court and served upon Plaintiff.

Dated:  July 16, 2021

Respectfully submitted,

_____/s/ Anthony T. Pierce_____
Anthony T. Pierce (D.C. Bar No. 415263)
Miranda A. Dore (D.C. Bar No. 1617089)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 887-4000
apierce@akingump.com
mdore@akingump.com

Steven A. Zalesin (*pro hac vice application to be filed*)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Telephone: (212) 336-2000
sazalesin@pbwt.com

*Attorneys for The Coca-Cola Company*