# EXHIBIT A

Filed
D.C. Superior Court
06/04/2021 16:45PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION

| | |
|---|---|
| EARTH ISLAND INSTITUTE, 2150 Allston Way, Suite 460, Berkeley, CA 94704,<br><br>                     Plaintiff,<br><br>v.<br><br>THE COCA-COLA COMPANY, 1 Coca Cola Plz NW, Atlanta, GA 30313,<br><br>                    Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

On behalf of itself and the general public, and in the interest of consumers, Plaintiff Earth Island Institute, by and through its counsel, brings this action against Defendant The Coca-Cola Company ("Coca-Cola") concerning its false and deceptive marketing representing itself as a sustainable and environmentally friendly company, despite being one of the largest contributors to plastic pollution in the world. Earth Island Institute alleges the following based upon information, belief, and the investigation of its counsel.

## INTRODUCTION

1. Plastic pollution is a global problem and threatens human and environmental health on a massive scale.

2. Consumers within the District and across the country believe that plastic pollution presents significant environmental harms.

3.      Due to these concerns, consumers are reevaluating their choices and the effects of their actions on the environment.

4.      Because of consumers' growing concerns about environmental harms, consumers, as Coca-Cola knows, are willing to seek out services or products that are less harmful to the environment and prefer to support companies that purport to share their values, including a commitment to reducing impact on the environment.

5.      For this reason, some companies that produce significant amounts of plastic pollution are beginning to advertise themselves as environmentally friendly to counter the common consumer perception that certain industries are engaged in activities that cause environmental and human health harms.

6.      Companies that are among the largest plastic polluters are now publicly setting long-term goals to become more "sustainable," develop more effective recycling systems, and move toward a "circular economy,"[1] which would entail radically reimagining production and consumption patterns to eliminate waste.

7.      At the same time, many of these same companies continue to produce plastic waste on an immense scale, placing continued stress on natural environments and human health throughout the world.

8.      Contrary to Coca-Cola's representations, the company remains a major plastic polluter, has made no significant effort to transition to a "circular economy" or to otherwise operate

---

[1] A circular economy "aims to redefine growth, focusing on positive society-wide benefits. It entails gradually decoupling activity from the consumption of finite resources, and designing waste out of the system" to the greatest extent possible. It is based on three broad principles: "Design out waste and pollution . . . Keep products and materials in use . . . [and] regenerate natural systems." *Concept: What is a circular economy? A framework for an economy that is restorative and regenerative by design*, Ellen MacArthur Foundation, https://www.ellenmacarthurfoundation.org/circular-economy/concept (last visited June 3, 2021).

as a "sustainable" enterprise, and has a long history of consistently breaking its public promises on sustainability goals.

9.      Coca-Cola alone generates more plastic waste than **any other company** in the world, producing **2.9 million metric tons** of plastic waste per year,[2] according to a report from the Changing Markets Foundation.[3]

10.      Plastic pollution is now so widespread that a 2019 study commissioned by World Wildlife Fund International estimated that the average person could be consuming upwards of 1,700 particles of plastic every week from water alone, which is equivalent to roughly an entire credit card; the study found plastic fibers in **94.4 percent** of tap water samples in the United States.[4]

11.      Widespread plastic pollution aligns with broader production trends: since 1950, plastic production has skyrocketed from 2.3 million tons to 448 million tons in 2015.[5]

12.      In the face of such high quantities of plastic, recycling has proven overwhelmingly insufficient in addressing global plastic pollution. A mere **9 percent** of all plastic that has been produced since the 1950s has been recycled, while **79 percent** has ended up in landfills or the natural environment.[6]

13.      Coca-Cola has done relatively very little to address the immense problem of global plastic pollution and has even actively opposed legislation proven to improve recycling rates,

---

[2] *Talking Trash: The Corporate Playbook of False Solutions to the Plastic Crisis*, Talking Trash (Sept. 2020), https://talking-trash.com/wp-content/uploads/2020/09/TalkingTrash_FullReport.pdf.
[3] The Changing Markets Foundation works to "expose irresponsible corporate practices and drive change towards a more sustainable economy" through leveraging market forces. *Changing Markets Foundation*, Changing Markets Foundation, https://changingmarkets.org/ (last visited June 3, 2021).
[4] *You may be eating a credit card's worth of plastic each week: study*, Reuters (June 11, 2019, 8:07 PM), https://www.reuters.com/article/us-environment-plastic/you-may-be-eating-a-credit-cards-worth-of-plastic-each-week-study-idUSKCN1TD009.
[5] *Talking Trash*, *supra* note 2.
[6] *Id.*; Plastic enters the natural world at a rate of 8 million tons per year, or approximately one garbage truck per minute, *Id.*

COMPLAINT

instead using third-party organizations to place responsibility for plastic pollution on individual consumers.

14.     Moreover, plastic products are inherently harmful to the environment: as a fossil-fuel based material, plastic production requires extracting, transporting, and refining fossil fuels, processes which often emit significant amounts of greenhouse gases into the atmosphere and exacerbate the already-pronounced greenhouse gas effect.

15.     Consequently, Coca-Cola will never be a truly "sustainable" company unless it moves away from its reliance on single-use plastic entirely, which it has no plans to do.

16.     No reasonable consumer who sees Coca-Cola's representations would expect the steps that Coca-Cola is taking to combat plastic pollution to be so insignificant relative to the scale at which its plastic pollution occurs.

17.     By deceiving consumers about the nature and quality of the products that it produces and sells, as well as about the nature of its underlying business practices, Coca-Cola is able to capture the growing market of consumers in D.C. and elsewhere who are concerned about plastic pollution and seek to support environmentally friendly businesses.

18.     Coca-Cola's false and misleading representations and omissions violate the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, *et seq.*

19.     Because Coca-Cola's marketing and advertising tend to mislead and are materially deceptive about the true nature and quality of its products and business, Earth Island Institute brings this deceptive advertising case on behalf of itself and the general public pursuant to the CPPA.

## STATUTORY FRAMEWORK

20.    This action is brought under the District of Columbia Consumer Protection Procedures Act ("CPPA") D.C. Code § 28-3901, *et seq.*

21.    The CPPA makes it a violation for "any person" to, *inter alia*:

Represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

Represent that goods or services are of a particular standard, quality, grade, style, or model, if in fact they are of another;

Misrepresent as to a material fact which has a tendency to mislead;

Fail to state a material fact if such failure tends to mislead;

Use innuendo or ambiguity as to a material fact, which has a tendency to mislead; or

Advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

D.C. Code § 28-3904(a), (d), (e), (f), (f-1), (h).

22.    A violation occurs regardless of "whether or not any consumer is in fact misled, deceived or damaged thereby." *Id.*

23.    The CPPA "establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia." *Id.* § 28-3901(c). It "shall be construed and applied liberally to promote its purpose." *Id.*

24.    Because Earth Island Institute is a public-interest organization, it may act on behalf of the general public and bring any action that an individual consumer would be entitled to bring:

[A] public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under

subparagraph (A) of this paragraph for relief from such use by such person of such trade practice.

*Id.* § 28-3905(k)(1)(D)(i). Subparagraph (A) provides: "A consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District."

25.     A public-interest organization may act on behalf of consumers, *i.e.*, the general public of the District of Columbia, so long as the organization has a "sufficient nexus to the interests involved of the consumer or class to adequately represent those interests." *Id.* § 28-3905(k)(1)(D)(ii). As set forth in this Complaint, *see infra* ¶¶ 136-145, Plaintiff Earth Island Institute's mission includes educating consumers, including in the District of Columbia, and engaging in advocacy related to environmental and human health issues. Earth Island Institute thus has a sufficient nexus to D.C. consumers to adequately represent their interests.

26.     This is not a class action, or an action brought on behalf of any specific consumer, but an action brought by Earth Island Institute on behalf of the general public, *i.e.*, D.C. consumers generally. No class certification will be requested.

27.     This action does not seek damages. Instead, Earth Island Institute seeks to end the unlawful conduct directed at D.C. consumers. Remedies available under the CPPA include "[a]n injunction against the use of the unlawful trade practice." *Id.* § 28-3905(k)(2)(D). Earth Island Institute also seeks declaratory relief in the form of an order holding Coca-Cola's conduct to be unlawful.

## FACT ALLEGATIONS

28.     Coca-Cola's marketing is false and deceptive because the company portrays itself as "sustainable" and committed to reducing plastic pollution while polluting more than any other beverage company and actively working to prevent effective recycling measures in the U.S.

29.     Coca-Cola knows that consumers increasingly and deliberately seek out products and services from environmentally responsible companies.[7]

30.     Accordingly, Coca-Cola cultivates an environmentally friendly image for consumers who wish to avoid harm to our planet, in order to motivate climate-concerned consumers to continue to purchase its products and services.

I.     **Coca-Cola Represents the Company as Unqualifiedly "Sustainable" and Claims to "Take Responsibility" for Its Plastic.**

31.     Coca-Cola purports to be an environmentally conscious company that works to protect the interests of the planet.

32.     On its website, Coca-Cola writes: "Our planet matters. We act in ways to create a more sustainable and better shared future. To make a difference in people's lives, communities and our planet by doing business the right way."[8]



---

[7]     *See, e.g., The Sustainability Imperative,* Nielsen (Oct. 2015), https://nielseniq.com/global/en/insights/analysis/2015/the-sustainability-imperative-2/ (consumer survey finding that the majority of consumers seek to support sustainable business practices with their purchases and are more likely to buy products "from a company known for being environmentally friendly.").

[8] *Sustainable Business,* The Coca-Cola Company, https://www.coca-colacompany.com/sustainable-business (last visited June 3, 2021).

33.    In a Tweet from September 2020, Coca-Cola claimed that "Scaling sustainability solutions and partnering with others is a focus of ours."[9]



---

9    @CocaColaCo,    Twitter    (Sept.    24,    2020,    9:01    AM), https://twitter.com/cocacolaco/status/1309115717204226055.

COMPLAINT

34.     Another Tweet from April 2019 writes that "Business and sustainability are not separate stories for The Coca-Cola Company – but different facets of the same story."[10]



35.     Similarly, its 2019 Business & Sustainability Report says: "We're using our leadership to achieve positive change in the world and build a more sustainable future for our communities and our planet."[11]

---

[10]        @CocaColaCo,        Twitter        (Apr.        24,        2019,        4:20        PM), https://twitter.com/CocaColaCo/status/1121146826873298945.
[11]   *2019 Business & Sustainability Report*, The Coca-Cola Company (Apr. 2020), https://www.coca-colacompany.com/content/dam/journey/us/en/reports/coca-cola-business-and-sustainability-report-2019.pdf.

COMPLAINT

36.     James Quincey, Chairman and Chief Executive Officer of Coca-Cola, said in the same report: "I'm reminded of the power of our people to make a difference, to serve our communities and to constantly work to shape a more sustainable business."[12]

37.     Coca-Cola also makes various claims about "taking responsibility" for the plastic waste that it produces, as well as bottle collection goals that entail "getting every bottle back."

38.     The company emphasizes bottle collection and recycling as a solution to global plastic pollution, implying that increasing bottle recyclability and bolstering local recycling systems are sufficient steps in transitioning toward a "circular economy."

39.     These various claims lead consumers to believe that Coca-Cola is dedicated to reducing plastic pollution, and that purchasing beverages from Coca-Cola supports initiatives aimed at reducing plastic waste.

40.     For instance, Coca-Cola's website claims that it is "[C]ommitted to creating a World Without Waste by taking responsibility for the packaging we introduce to markets and working to reduce ocean pollution."[13]

---

[12] *Id.*

[13] *Progress Against a World Without Waste: Holding Ourselves Accountable*, The Coca-Cola Company (Oct. 9, 2018), https://www.coca-colacompany.com/news/progress-against-a-world-without-waste.

COMPLAINT



We're committed to creating a World Without Waste by taking responsibility for the packaging we introduce to markets and working to reduce ocean pollution. Below are a few highlights of progress we've made this year.

41.     In its 2019 Business & Sustainability Report Coca-Cola says: "Because our company is in so many communities globally, we can share our best practices. We can collaborate with governments, communities, the private sector, and NGOs to help develop more effective recycling systems that meet each community's unique needs."[14]

42.     Coca-Cola also touts ambitious bottle collection goals on its website and other marketing materials, reinforcing the idea that the company is taking personal responsibility for the plastic waste that it produces.

43.     For example, the company advertises on its website that it aims to "Collect and recycle a bottle or can for each one we sell by 2030."[15]

---

[14] *2019 Business & Sustainability Report*, *supra* note 11.
[15]     *Sustainable Packaging Collection Strategy*, The Coca-Cola Company, https://www.coca-colacompany.com/sustainable-business/packaging-sustainability/collect (last visited June 3, 2021).

COMPLAINT



44.     On its website, Coca-Cola also states that "The interconnected global challenges of packaging waste and climate change have made this a focus that we are taking a leadership position on."[16]

[16] *Sustainable Packaging*, The Coca-Cola Company, https://www.coca-colacompany.com/sustainable-business/packaging-sustainability#:~:text=executive%20focus.%E2%80%8B-,World%20Without%20Waste,how%20we%20can%20drive%20change (last visited June 3, 2021).



### World Without Waste

The interconnected global challenges of packaging waste and climate change have made this a focus that we are taking a leadership position on. Our company and our bottling partners are taking a hard look at the packaging we use and how we can drive change.

We are implementing innovative initiatives all around the world with each regional team driving a plan with strong executive focus.

45.     A Tweet from February 2020 says: "Part of our sustainability plan is to help collect and recycle a bottle or can for every one we sell globally by 2030."[17]



46.     Moreover, as part of its involvement in the "Every Bottle Back" campaign with the

---

[17] @CocaCola, Twitter (Feb. 3, 2020, 10:38 AM), https://twitter.com/CocaCola/status/1224356370708881411.

COMPLAINT

American Beverage Association and other large beverage companies, Coca-Cola claims that it is "… committed to getting *every bottle back*."[18]





## OUR NEW INITIATIVE:
# TOGETHER, WE'RE COMMITTED TO GETTING *EVERY BOTTLE BACK*

Our plastic bottles are made to be remade. We are carefully designing them to be 100% recyclable – even the caps. Our goal is for every bottle to become a new bottle, and not end up in oceans, rivers, beaches and landfills. And that means we are using less new plastic.

That's why America's beverage companies have launched a new initiative to get *Every Bottle Back*. This unprecedented commitment includes:

• Working with World Wildlife Fund through the *ReSource: Plastic* initiative to reduce our plastic footprint.

• Partnering with The Recycling Partnership and Closed Loop Partners to improve recycling access, provide education to residents and modernize the recycling infrastructure in communities across the country.

• Increasing awareness about the value of our 100% recyclable plastic bottles.

• Introducing a new voluntary on-pack message to promote the recyclability of our plastic bottles and caps.

SEE HOW WE'RE DOING IT

47.     In a video produced in partnership with the American Beverage Association, Coca-Cola, Dr. Pepper, and Pepsi promote their "Every Bottle Back" initiative. The narrators in the video say:

> We need to reduce plastic waste in the environment. That's why at American beverage companies, our bottles are made to be remade. Not all plastic is the same. We're carefully designing our bottles to be 100% recyclable, including the caps. They're collected and separated from other plastics so they can be turned back into materials that we use to make new bottles. That completes the circle and reduces plastic waste. Please help us get every

---

[18] *Our New Initiative: Together, We're Committed To Getting Every Bottle Back*, American Beverage Association, https://www.innovationnaturally.org/plastic/ (last visited June 3, 2021).

COMPLAINT

bottle back.[19]

48.     On another webpage dedicated to the "Every Bottle Back" initiative, the site displays a person in a Coca-Cola uniform alongside the text: "Together, America's beverage companies are committed to reducing plastic waste in our environment."[20]



49.     Through this advertising approach—presenting itself both individually and as a member of the American Beverage Association—Coca Cola portrays itself as committed to the principles of a circular economy and taking personal responsibility for the plastic waste it produces.

50.     Coca-Cola has also issued a variety of commitments regarding the recyclability of its plastic products, as well as promoted new plant-based bottles as evidence of its commitment to sustainability.

---

[19] *We Are America's Beverage Companies*, American Beverage Association, https://www.americanbeverage.org/ (last visited June 3, 2021).

[20] *Our Bottles Are Made To Be Remade: Every Bottle Back*, American Beverage Association, https://www.innovationnaturally.org/every-bottle-back/ (last visited June 3, 2021).

COMPLAINT

51.    On Coca-Cola's webpage entitled "Sustainable Packaging Design," the company claims that it will "Make 100% of our packaging recyclable globally by 2025. [And] [u]se at least 50% recycled material in our packaging by 2030."[21]



52.    In a similar vein, in October of 2020, Coca-Cola announced its partnership with Danish startup Paboco to develop a 100 percent paper bottle.[22]

---

[21] *Sustainable Packaging Design*, The Coca-Cola Company, https://www.coca-colacompany.com/sustainable-business/packaging-sustainability/design (last visited June 3, 2021).

[22] *Coca-Cola Unveils Paper Bottle Prototype*, The Coca-Cola Company, https://www.coca-colacompany.com/news/coca-cola-unveils-paper-bottle-prototype (last visited June 3, 2021).

THE *Coca-Cola* COMPANY

## Coca-Cola Unveils Paper Bottle Prototype

🕐 4 MIN READ | 11/06/2020





Coca-Cola is partnering with Danish startup Paboco to develop a 100% paper bottle.

53.    The first-generation prototype featured a paper shell with a 100 percent recycled plastic closure and liner inside of the bottle, with future iterations projected to be entirely "bio-based."

54.    Coca-Cola positions this effort as evidence of its commitment to finding more sustainable alternatives to its PET-bottle production, apparently a meaningful step in moving toward a "World Without Waste."[23]

---

[23] "World Without Waste" is the name of one of Coca-Cola's environmental programs. As part of the program, Coca-Cola has pledged to make its packaging 100 percent recyclable by 2025 and use 50 percent recycled material in its bottles and cans by 2030, as well as collect a bottle or can for each one the company sells by 2030. *Question: What is World Without Waste?*, The Coca-Cola Company, https://www.coca-colacompany.com/faqs/what-is-world-without-waste (last visited June 3, 2021).

COMPLAINT

55.     Coca-Cola also published in its Business & Sustainability Report from 2019: "We are fundamentally rethinking how we get our products to consumers, including what kind of packaging to use and whether a package is needed at all."[24]

56.     The various claims highlighted here give consumers the impression that Coca-Cola is taking unprecedented and serious steps to "take responsibility" for its own plastic pollution; increase bottle collection rates; and ultimately reimagine patterns of plastic consumption by developing new bottle technology.

**II.   Coca-Cola's Practices Are Categorically Unsustainable and Environmentally Harmful.**

57.     Contrary to Coca-Cola's representations, the company is far from what consumers would understand to be a sustainable business.

58.     As previously noted, Coca-Cola is the world's leading plastic waste producer, generating ***2.9 million metric tons*** of plastic waste each year.[25]

59.     This amounts to Coca-Cola using ***200,000 bottles per minute***, which constitutes approximately one-fifth of the entire world's polyethylene terephthalate ("PET")-bottle output.[26]

60.     Furthermore, Coca-Cola is responsible for ***200,000 tons*** of plastic pollution per year—the equivalent of thirty-three football pitches every day.[27]

61.     The entire life cycle of plastic presents serious risks to human health, and has been shown to contribute to cancer, neurotoxicity, reproductive issues, endocrine disruption, and genetic problems.[28]

---

[24] *2019 Business & Sustainability Report, supra* note 11.
[25] *Talking Trash, supra* note 2.
[26] *Id.*
[27] *Id.*
[28] *Id.*

62.     Plastic pollution also presents an unprecedented crisis for wildlife throughout the world. Many animals (and especially marine life) ingest large quantities of plastic materials that enter the natural environment, wreaking havoc on their digestive systems and overall health.

63.     A study from 2014 found that over 270 marine species have experienced impaired movement, starvation, or death due to ingestion or entanglement in plastic debris.[29]

64.     Furthermore, plastics have incredibly carbon-intensive life cycles.[30]

65.     Plastic production requires fossil fuel extraction and distillation; plastic products themselves are constituted from fossil fuels, and after production must be transported to market.[31]

66.     Additionally, dumping, incinerating, recycling, or composting (certain) plastics all release carbon dioxide ($CO_2$), a powerful greenhouse gas.[32]

67.     Researchers at the University of California, Santa Barbara found that in 2015, life cycle emissions from plastics were equivalent to nearly *1.8 billion metric tons* of $CO_2$.[33]

68.     Plastics' reliance on limited and environmentally harmful fossil fuel resources precludes the materials from ever being truly sustainable, particularly on the large scale at which Coca-Cola's plastic use operates.

69.     Therefore, Coca-Cola is categorically not a sustainable company and misleads consumers in presenting itself as such. The company produces an incredible amount of plastic

---

[29] Michelle Sigler, *The Effects of Plastic Pollution on Aquatic Wildlife: Current Situations and Future Solutions*, Water Air Soil Pollution (Oct. 18, 2014), https://projectdragonfly.miamioh.edu/wp-content/uploads/2019/06/Sigler_Michelle_Water-Air-Soil-Pollut_2014.pdf.

[30] *Plastic's carbon footprint: Researchers conduct first global assessment of the life cycle greenhouse gas emissions from plastics*, Science Daily (Apr. 15, 2019), https://www.sciencedaily.com/releases/2019/04/190415144004.htm#:~:text=Plastics%20have%20surprisingly%20carbon%2Dintense%20life%20cycles.&text=Dumping%2C%20incinerating%2C%20recycling%20and%20composting,expect%20this%20number%20to%20grow.

[31] *Id.*

[32] *Id.*

[33] *Id.*

COMPLAINT

pollution and fails to take responsibility for its own waste, despite its representations to the contrary.

### a. Recycling is Not an Unqualified Solution to Global Plastic Pollution.

70.     Coca-Cola advances recycling as a straightforward solution to plastic pollution and claims that it is working to "take responsibility" for its contribution to plastic pollution.

71.     But various reports have found that Coca-Cola has not taken significant action to take responsibility for its own plastic waste, and the company has in fact actively opposed legislation in the United States that would improve recycling rates.

72.     As it exists right now, recycling infrastructure in the United States is incapable of keeping pace with Coca-Cola's incredibly high production rates.

73.     Market.us estimates that Coca-Cola sells *1.8 billion bottles per day*, and that globally, people consume over 10,000 soft drinks from Coca-Cola *every second of every day*.[34]

74.     And despite Coca-Cola's heavy emphasis on recycling in its advertising and online representations, the vast majority of its bottles end up in landfills or entering the natural environment as pollution.

75.     The EPA estimated that in 2018 only 8.7 percent of all recyclable plastics in the United States were recycled, with a rate among PET bottles and jars of 29.1 percent.[35]

---

[34] *Coca-Cola Company Statistics and Facts*, Market.us (Sept. 28, 2020), https://market.us/statistics/food-and-beverage-companies/coca-cola-company/#:~:text=Coke%20sold%2025%20bottles%20its,each%20of%20its%2020%20brands.

[35] *Facts and Figures about Materials, Waste and Recycling*, United States Environmental Protection Agency, https://www.epa.gov/facts-and-figures-about-materials-waste-and-recycling/plastics-material-specific-data#:~:text=While%20overall%20the%20amount%20of,plastic%20containers%20is%20more%20significant   (last visited June 3, 2021).

76.     Low rates of recycling mean that a vast amount of recyclable plastic ends up in landfills or enters the natural environment.[36]

77.     The EPA estimated that landfills in the United States received ***27 million tons of plastic*** in 2018.[37] The figure below[38] illustrates the relative share of plastics that are recycled versus those that enter landfills each year:



78.     And out of the many categories of plastics, containers and packaging (which includes the PET bottles that Coca-Cola produces) accounted for ***more than half*** of the plastics that ended up in landfills.[39]

79.     More generally, Coca-Cola greatly overstates the efficacy of recycling in addressing the plastics crisis as well as its own contributions to improving recycling rates.

---

[36] *Talking Trash*, *supra* note 2.
[37] *Facts and Figures About Materials, Waste and Recycling*, *supra* note 35.
[38] *Id.*
[39] *Id.*

80.     The plastics industry has known that plastics are both environmentally and economically unsustainable for over forty years.

81.     NPR reported in September 2020 that a plastic industry insider wrote in a speech in 1974 that "There is serious doubt that [recycling plastic] can ever be made viable on an economic basis."[40]

82.     Despite the well-publicized shortcomings of recycling, Coca-Cola and other large plastic producers have consistently pushed recycling as an unqualified solution to the plastics crisis since the 1970s.

83.     Larry Thomas, former president of the Society of the Plastics Industry (today known as the Plastics Industry Association) told NPR: "If the public thinks that recycling is working, then they are not going to be as concerned about the environment."[41]

84.     Coca-Cola's recycling advertisements aim to assuage consumers' growing concerns about the environmental harms associated with the company's business, convincing consumers that there are no significant environmental consequences associated with purchasing single-use plastic as long as they dispose of the material in a responsible manner.

85.     But a very small portion of plastic materials are recycled, even if consumers dispose of them properly.

86.     As previously mentioned, only approximately 30 percent of PET bottles were recycled in 2018 in the United States.[42]

---

[40] *Id.*
[41] *Id.*
[42] *Facts and Figures about Materials, Waste and Recycling, supra* note 35.

COMPLAINT

87.     There are various factors that contribute to the United States' notoriously low recycling rate. In large part, the economics of plastic production and recycling drive low recycling rates; it is far cheaper to produce virgin plastic than to pay for the various processes required to recycle existing plastic in the United States.[43]

88.     An article in the New York Times from March 2019 reported that hundreds of towns and cities throughout the United States have cancelled their recycling programs, limited the types of materials they accepted, or agreed to substantial price increases to continue their recycling programs.[44]

89.     The changes to recycling prices came in large part from China's decision to bar plastics slated for recycling from entering the country in January of 2018; prior to that point, the United States had been exporting hundreds of thousands of tons of recyclable materials each year to China.[45]

90.     Waste management companies and municipalities have since been struggling to find buyers for recyclable materials, and it is often more economical for them to send recyclable materials to landfills rather than pay to sort, clean, shred, and melt them for reuse.[46]

91.     More recently, the global COVID-19 pandemic decreased the cost of fossil fuels, exacerbating the difference in cost between virgin plastic and recycled plastic.

---

[43] Laura Sullivan, *How Big Oil Misled The Public Into Believing Plastic Would Be Recycled*, NPR (Sept. 11, 2020, 5:00 AM ET), https://www.npr.org/2020/09/11/897692090/how-big-oil-misled-the-public-into-believing-plastic-would-be-recycled; John Hocevar, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastics Recyclability*, Greenpeace (Feb. 18, 2020), https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf.

[44] Michael Corkery, *As Costs Skyrocket, More U.S. Cities Stop Recycling*, The New York Times (Mar. 16, 2019), https://www.nytimes.com/2019/03/16/business/local-recycling-costs.html.

[45] *Id;* Christopher Joyce, *Where Will Your Plastic Trash Go Now That China Doesn't Want It?*, NPR (Mar. 13, 2019, 4:28 PM ET), https://www.npr.org/sections/goatsandsoda/2019/03/13/702501726/where-will-your-plastic-trash-go-now-that-china-doesnt-want-it; John Hocevar, *supra* note 43.

[46] Alana Semuels, *Is This the End of Recycling?*, The Atlantic (Mar. 5, 2019), https://www.theatlantic.com/technology/archive/2019/03/china-has-stopped-accepting-our-trash/584131/.

92.     A market analysis at the Independent Commodity Intelligence Services estimated that as of October 2020, it was approximately *83 percent to 93 percent more expensive* to use recycled bottle-grade plastic than to produce it new.[47]

93.     Plastic also degrades with each use, leaving each bottle of recycled plastic of a lesser quality than its former iteration.[48]

94.     All of these traits stand in contrast to Coca-Cola's representations that recycling PET bottles is a clear-cut solution to the plastics crisis.

95.     In a February 2020 report published by Greenpeace, marine biologist and director of the organization's oceans campaign John Hocevar wrote that "Companies must move beyond the outdated, failed approach of promoting recycling as the solution to excessive plastic waste and pollution. . . . Instead of pretending that the trillions of throwaway plastic items produced each year will be recycled or composted, we must stop producing so many of them in the first place."[49]

96.     Coca-Cola has established no strategy to meaningfully reduce its plastic pollution footprint and misrepresents its contributions to improving recycling processes throughout the United States, as well as exaggerates the role of recycling in addressing global plastic pollution more broadly.

**b. Coca-Cola Opposes Legislation that Improves Bottle Recovery Rates, Failing to "Take Responsibility" for Its Contribution to Plastic Pollution.**

97.     Despite its promise to "take responsibility" for its own plastic waste through enhanced bottle recovery, Coca-Cola has opposed legislation that has been proven to deliver higher rates of bottle recovery.

---

[47] Joe Brock, *Special Report: Plastic pandemic – COVID-19 trashed the recycling dream,* Reuters (Oct. 5, 2020, 7:13 AM), https://www.reuters.com/article/health-coronavirus-plastic-recycling-spe-idUSKBN26Q1LO.

[48] *Id.*

[49] John Hocevar, *supra* note 43.

98.     In fact, Coca-Cola has made various promises regarding bottle recovery and collection in the past and has made very limited progress on fulfilling them.[50]

99.     For instance, a 2020 Changing Markets Foundation report classified Coca-Cola's commitment to "Recover 50% of the equivalent bottles and cans sold annually by 2015" as a "broken promise," because the company failed to reach this goal by the designated time.[51]

100.    In 2007 Coca-Cola promised to "Recycle or reuse all the plastic bottles used in the U.S. market."[52]

101.    Changing Markets Foundation classified this commitment as an "empty promise," given that there was "No final date for achieving this goal nor is it a global commitment across all markets."[53]

102.    Advancing targets with neither clear parameters nor methodology for measuring the company's progress allows Coca-Cola to portray itself as significantly more environmentally conscious than it is.

103.    Furthermore, Coca-Cola has not meaningfully worked to implement legislation or measures that would help to meet its self-proclaimed goal to get "every bottle back."

104.    A 2020 report from the Changing Markets Foundation found that the company had not yet called for comprehensive legislation to mandate over 90 percent separate collection of plastic bottles, a crucial first step in fulfilling Coca-Cola's own goal to collect and recycle a bottle or can for each one that the company sells.[54]

---

[50] *Talking Trash, supra* note 2.
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Talking Trash, supra* note 2; Currently, only ten states have state container deposit laws, not nearly enough to achieve the lofty goal of 90% separate collection that Coca-Cola sets. *State Beverage Container Deposit Laws,*

105.     In fact, far from sharing its "best practices" to "help develop more effective recycling systems,"[55] Coca-Cola actively opposes container deposit laws, known widely as "bottle bills" in the United States, which have been shown to greatly increase bottle collection and recycling rates.[56]

106.     Bottle bills impose a small fee on each bottle sale which is returned to the consumer upon giving the bottle to a recycling facility, which incentivizes its return. Such a structure often also imposes a small handling fee on beverage distributors for processing empty containers, making it slightly more expensive for distributors like Coca-Cola to sell their products.[57]

107.     Although Coca-Cola has expressed that it is no longer opposed to bottle bills, the New York Times recently reported that at a meeting for the organization Atlanta Recycles, recycling experts expressed fears that Coca-Cola would withdraw funding from the organization should they pursue a bottle bill in the state.[58]

108.     Gloria Hardegree, executive director of the Georgia Recycling Coalition, an organization that receives funding from Coca-Cola said: "With the investment that Coke is getting ready to make in Atlanta and in other major cities across the U.S. with this World Without Waste, it is not going to be a part of that conversation [on a bottle bill]."[59]

---

National Conference of State Legislatures (Mar. 13, 2020), https://www.ncsl.org/research/environment-and-natural-resources/state-beverage-container-laws.aspx.

[55] *2019 Business & Sustainability Report*, *supra* note 11.

[56] Michael Corkery, *Beverage Companies Embrace Recycling, Until It Costs Them*, The New York Times, https://www.nytimes.com/2019/07/04/business/plastic-recycling-bottle-bills.html (last visited June 3, 2021).

[57] *Id.*

[58] *Id.*

[59] Sharon Lerner, *Leaked Audio Reveals How Coca-Cola Undermines Plastic Recycling Efforts*, The Intercept (Oct. 18, 2019, 10:45 AM), https://theintercept.com/2019/10/18/coca-cola-recycling-plastics-pollution/.

109.    Coca-Cola has also repeatedly failed to take responsibility for its own plastic waste through supporting organizations that place undue emphasis on individual consumers' role in the global plastics crisis.

110.    For example, Coca-Cola has long held ties to the organization, Keep America Beautiful, a pro-recycling organization founded in the early 1950s by several prominent plastics producers and citizens.

111.    Keep America Beautiful lists various corporate sponsors on its website, including Coca-Cola, Nestlé, Keurig Dr. Pepper, and other prominent plastic-producing companies.[60]

112.    According to the Keep America Beautiful website, the organization's mission is "To inspire and educate people to take action every day to improve and beautify their community environment."[61]

113.    Since its inception, Keep America Beautiful has worked to achieve its mission by placing outsize emphasis on the role of individual consumers in reducing plastic pollution, rather than addressing the source of plastic itself—the producers.

114.    Starting with advertisements produced in collaboration with the Ad Council in 1960, Keep America Beautiful has advanced taglines such as "Every litter bit hurts," and "Don't be a litterbug."[62]

115.    Its most recent campaign, "I Want To Be Recycled," offers tips on how to become an "everyday" recycler and help to divert waste from entering into landfills.

---

[60] *Our Partners*, Keep America Beautiful, https://kab.org/about/partners/?field_partner_type_tid=28 (last visited June 3, 2021).

[61] *Mission & History*, Keep America Beautiful, https://kab.org/about/approach/mission-history/ (last visited June 3, 2021).

[62] Jane L. Levere, *After the 'Crying Indian,' Keep America Beautiful Starts a New Campaign*, The New York Times (July 16, 2013), https://www.nytimes.com/2013/07/17/business/media/decades-after-a-memorable-campaign-keep-america-beautiful-returns.html.

116.     This campaign fails to acknowledge, however, that a significant portion of recyclable materials from its sponsors—regardless of whether consumers dispose of them correctly—end up in landfills or the natural environment.[63]

117.     In supporting Keep America Beautiful, Coca-Cola has contributed to misleading the public into believing that everyday consumers are to blame for the plastics crisis, rather than insufficient recycling infrastructure and the corporations producing the plastics.

118.     Coca-Cola does very little to "take responsibility" for the plastic waste that it produces and continues to place outsize responsibility on individual consumers for plastic pollution through campaigns such as those that Keep America Beautiful promotes.

119.     Furthermore, recycling is an extremely limited approach to curbing the vast amount of plastic waste that is entering landfills and the natural environment.

120.     Coca-Cola misleads consumers by overstating the benefits of recycling, as well as the capacity and ability of waste management companies and municipalities to economically recycle the large amount of PET bottle waste that companies such as Coca-Cola produce.

121.     In reality, recycling rates are subject to various factors, including economic viability, the infrastructure and capacity of the applicable recycling facilities, and the inability of recycling facilities to recycle more novel forms of packaging, such as bottles with sleeves.[64]

122.     In marketing its products as unqualified "recyclable," Coca-Cola's messaging to consumers obfuscates these complexities and how they affect recycling rates, and in turn, the sustainability of Coca-Cola's products.

---

[63] Livia Albeck-Ripka, *Your Recycling Gets Recycled, Right? Maybe, or Maybe Not*, The New York Times (May 29, 2018), https://www.nytimes.com/2018/05/29/climate/recycling-landfills-plastic-papers.html.
[64] John Hocevar, *supra* note 43.

   c.   **Coca-Cola's Bottle Recyclability Metrics and New "Sustainable" Bottle
        Technology Are Insufficient to Offset the Company's Contribution to Plastic
        Waste.**

123.    Like the company's targets relating to bottle collection, recycled content goals are

not new to Coca-Cola's advertising strategy.

124.    Changing Market Foundation's 2020 report on plastic pollution identifies the first

recycled content goal that Coca-Cola issued in 1990 to "Include 25% recycled plastic content" in

its bottles throughout the U.S. market.[65]

125.    According to the report, Coca-Cola shortly afterward reduced its 25 percent

recycled plastic content goal to just 10 percent, while also delaying the timing to the end of 2005.

Under the new stipulations, Coca-Cola still did not fulfill the 10 percent recycled plastic content

goal by the end of 2005: its own 2006 CSR report claimed only 3.6 percent recycled plastic content

in its products in the U.S. market.[66]

126.    And despite Coca-Cola's claims that it is considering "whether a package is needed

at all"[67] for its products, the company has no intention to meaningfully shift away from its reliance

on plastic.

127.    In January of 2020, Coca-Cola's Head of Sustainability, Bea Perez, said that the

company will not abandon single-use plastic bottles due to the company's perception that

consumers prefer plastic bottles to alternatives.[68]

128.    The promises that Coca-Cola advertises on its website, then, are largely without

significant impact on the amount of plastic pollution that the company produces.

_____

[65] *Talking Trash*, *supra* note 2.
[66] *Id.*
[67] *2019 Business & Sustainability Report*, *supra* note 11.
[68] Daniel Thomas, *Davos 2020: People still want plastic bottles, says Coca-Cola,* BBC (Jan. 21, 2020),
https://www.bbc.com/news/business-51197463.

129.   By opposing meaningful legislation that increases PET recycling rates, while simultaneously advancing recycling as an unqualified solution to plastic pollution, Coca-Cola misrepresents the company's role in reducing plastic pollution.

130.   Despite its claims to the contrary, Coca-Cola is not meaningfully dedicated to reducing the harmful impacts of its business and shifting away from single-use plastic.

## III.   Coca-Cola's Representations Are Material and Misleading to Consumers.

131.   Coca-Cola's false and misleading representations about the degree to which its business is sustainable are material to consumers.

132.   Consumers care deeply about environmental issues and are more likely to purchase products that they perceive as environmentally friendly.[69]

133.   A 2019 study conducted by Coleman Parkes Research on behalf of Accenture surveyed 1,500 consumers in seventeen cities throughout the United States. Forty-seven percent of consumers surveyed expressed a desire to conduct business with retailers that were environmentally conscious.[70]

134.   The desire for sustainable products is especially pronounced among younger consumers; a study from the International Trademark Association from 2018 found that 89 percent of internet users ages 18 to 23 felt that brands should aim to do good in the world.[71]

135.    Coca-Cola's business practices fall far short of what consumers would expect from a "sustainable" company. Its advertising strategies mislead consumers into believing that Coca-

---

[69] *The Sustainability Imperative*, *supra* note 7.

[70] Lucy Koch, *Sustainability Is Factoring into 2019 Holiday Purchases*, eMarketer (Oct. 14, 2019), https://www.emarketer.com/content/sustainability-is-factoring-into-2019-holiday-purchases?_ga=2.170357734.731468461.1617378067-462530432.1615825431.

[71] *Id.*

Cola prioritizes environmental health, capturing a growing class of consumers who wish to support environmentally sustainable companies.

## PARTIES

136.    Plaintiff Earth Island Institute is a 501(c)(3) non-profit, public-interest organization whose mission is to advocate for environmental and human health through activist projects, legal advocacy, leadership, and an award-winning journal.

137.    Earth Island Institute is based in Berkeley, California and performs its work throughout the United States, including in the District of Columbia.

138.    Earth Island Institute was founded in 1982 as a non-profit organization meant to inform the public about salient environmental harms and has since worked, among other things, to protect marine life; confront plastic pollution; preserve forests; help indigenous leaders protect their sacred sites; and restore wetlands.

139.    As part of its mission, Earth Island Institute acts as a fiscal sponsor to projects that counteract threats to the biological and cultural diversity that sustains the environment.

140.    Projects that are fiscally sponsored by Earth Island Institute are legally part of Earth Island Institute. All project assets belong to Earth Island Institute and a project's staff are employees of Earth Island Institute.

141.    One of Earth Island Institute's fiscally sponsored projects is Plastic Pollution Coalition ("PPC").

142.    PPC is a global alliance of more than 1,200 organizations, businesses, and thought leaders working towards a more just and equitable world free of plastic pollution and its toxic impacts on humans, animals, waterways, oceans, and the environment.

143.    PPC advocates for a transition away from single-use plastic and educates

consumers, including those within the District of Columbia, on the environmental and health impacts of single-use plastic across its entire life cycle as well as alternatives to single-use plastic. PPC's efforts help consumers make informed choices when they shop. PPC's website, public education, research, network building, and mobilization activities provide an important service to consumers and community activists.

144.    Earth Island Institute, including PPC, has a strong interest in truth-in-advertising regarding environmental concerns. The organization diligently works to promote ecological systems that are clean, accessible, and free of contamination.

145.    Consequently, Earth Island Institute, through PPC's work, has a sufficient nexus to consumers of Coca-Cola's services to adequately represent those interests.

146.    Defendant Coca-Cola is one of the largest plastic-producing companies in the world and owns a variety of beverage brands.

147.    At all times mentioned herein, Coca-Cola was and is a publicly traded corporation incorporated in Georgia and maintains its headquarters in Atlanta, Georgia. Defendant was and is, at all relevant times, engaged in commercial transactions throughout the District of Columbia.

148.    Coca-Cola markets and sells its products and services in the District of Columbia and throughout the United States.

149.    Upon information and belief, Coca-Cola has caused harm to the general public of the District of Columbia.

150.    Earth Island Institute is acting on behalf of itself and for the benefit of the general public as a private attorney general pursuant to D.C. Code § 28-3905(k)(1). Earth Island Institute is a public-interest organization pursuant to D.C. Code § 28-3901(a)(15).

**JURISDICTION AND VENUE**

151.    This Court has personal jurisdiction over the parties in this case. Plaintiff Earth Island Institute, by filing this Complaint, consents to this Court having personal jurisdiction over it.

152.    This Court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-423. Defendant has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over it because, *inter alia*, Coca-Cola is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in the District of Columbia, or otherwise purposefully avails itself of the laws of this District through its marketing and sales of its products and services in this District.

153.    This Court has subject matter jurisdiction over this action pursuant to D.C. Code §§ 28-3905(k)(1)(B), (k)(1)(D), and (k)(2).

**CAUSE OF ACTION**

*Violations of The District of Columbia Consumer Protection Procedures Act*

154.    Pursuant to D.C. Code §§ 28-3905(k)(1) and 28-3905(k)(2), Plaintiff Earth Island Institute brings this Count against Coca-Cola on behalf of itself, its members, and the general public of the District of Columbia, for Coca-Cola's violation of the CPPA, D.C. Code § 28-3901, *et seq.*

155.    Plaintiff incorporates by reference all the allegations in the preceding paragraphs of this Complaint.

156.    Coca-Cola represents itself as a sustainable company while polluting more plastic than any other company in the world.

157.    Coca-Cola's advertising misrepresents, tends to mislead, and omits facts regarding

the characteristics, standard, quality, and grade of its business practices and the products and services it sells.

158.    Coca-Cola's products, services, and business practices lack the characteristics, benefits, standards, qualities, or grades that Coca-Cola states and implies in its advertisements.

159.    Coca-Cola knowingly did not sell its products and services as advertised.

160.    The facts, as alleged above, demonstrate that Coca-Cola has violated the CPPA, D.C. Code § 28-3901 *et seq*. Specifically, Coca-Cola has violated D.C. Code § 28-3904, which makes it an unlawful trade practice to:

> (a)    represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .
>
> (d)    represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;
>
> (e)    misrepresent as to a material fact which has a tendency to mislead; . . .
>
> (f)    fail to state a material fact if such failure tends to mislead;
>
> (f-1)    [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; . . . [or]
>
> (h)    advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

161.    The CPPA makes such conduct an unlawful trade practice "whether or not any consumer is in fact misled, deceived or damaged thereby." D.C. Code § 28-3904.

162.    Plaintiff Earth Island Institute need not show proof of deception to succeed on its CPPA claim; nevertheless, upon information and belief, consumers were, in fact, deceived.

163.    Earth Island Institute has a sufficient nexus to consumers of Coca-Cola's products and services to adequately represent those interests.

164.    Because Coca-Cola misrepresents the characteristics and benefits of the products it provides; misrepresents the standard, quality, and grade of the products; and advertises its products and services without the intent to provide them as advertised, Coca-Cola's marketing of its services violates D.C. Code §§ 28-3904(a), (d), (e), (f), (f-1), and (h).

165.    Coca-Cola is a "person" within the meaning of D.C. Code § 28-3901(a)(1), a merchant under § 28-3901(a)(3), and provides "goods and services" within the meaning of § 28-3901(a)(7).

166.    Any consumer has the right to bring an action for redress of Coca-Cola's unlawful behavior, *see* D.C. Code § 28-3905(k)(1)(A), and the statute does not limit consumer plaintiffs according to whether they purchased the product at issue. Nevertheless, as alleged in this Complaint, the plastic products are marketed and provided in the District, and consumers within the District have obtained these products under the misrepresentations made by Coca-Cola. Therefore, a variety of purchasing and non-purchasing consumers could bring an action against Coca-Cola based on the misrepresentations and omissions listed in this Complaint.

167.    Pursuant to D.C. Code § 28-3905(k)(1)(D)(i), "a public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice."

168.    The only limitation on this power of a public interest organization to act on behalf of consumers is that the public interest organization must have "sufficient nexus to the interests

involved of the consumer or class to adequately represent those interests." D.C. Code § 28-3905(k)(1)(D)(ii). As set forth in this Complaint, *see supra* ¶¶ 124-132, Earth Island Institute was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of environmental responsibility. In addition, Earth Island Institute has retained the undersigned competent counsel, who have significant experience in litigating under the CPPA, to pursue this action.

169.    Via § 28-3905(k)(1)(D)(i), the CPPA allows for public interest organizational standing to the fullest extent recognized by the D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

170.    Earth Island Institute is a "person" within the meaning of D.C. Code § 28-3901(a)(1) and a "public interest organization" within the meaning of D.C. Code § 28-3901(a)(15).

## PRAYER FOR RELIEF

*Wherefore*, Plaintiff Earth Island Institute prays for judgment against Defendant Coca-Cola, and requests the following relief:

A.    a declaration that Coca-Cola's conduct is in violation of the CPPA;

B.    an order enjoining Coca-Cola's conduct found to be in violation of the CPPA; and

C.    an order granting Plaintiff costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: June 4, 2021

Kim E. Richman (Bar No. 1022978)
Richman Law and Policy
1 Bridge Street, Ste. 83
Irvington, NY 10533
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
krichman@richmanlawpolicy.com

*Attorney for Plaintiff*

COMPLAINT

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

EARTH ISLAND INSTITUTE

Case Number: _____

vs

Date: 6/4/2021 _____

THE COCA-COLA COMPANY

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*  Kim E. Richman | Relationship to Lawsuit |
| Firm Name:  Richman Law & Policy | ☒ Attorney for Plaintiff |
| Telephone No.:  (212) 687-8291   Six digit Unified Bar No.:  1022978 | ☐ Self (Pro Se)  ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury   ☐ 6 Person Jury   ☒ 12 Person Jury

Demand: $ N/A _____   Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____   Judge: _____   Calendar #: _____

Case No.: _____   Judge: _____   Calendar#: _____

---

NATURE OF SUIT:     *(Check One Box Only)*

### A. CONTRACTS

**COLLECTION CASES**

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
    Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
    Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
    Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
    Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
    Under $25,000 Consent Denied

### B. PROPERTY TORTS

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

### C. PERSONAL TORTS

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☒ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
    Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
    Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
      (DC Code § 11-941)
- ☐ 10  Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
      (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
      Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
      Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
      Judgment [ D.C. Code §
      2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
      42-3301, et seq.)

- ☐ 21 Petition for Subpoena
      [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
      (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D.  REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

6/4/2021
_____
Date

Filed
D.C. Superior Court
06/08/2021 12:45PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION

| | |
|---|---|
| EARTH ISLAND INSTITUTE, 2150 Allston Way, Suite 460, Berkeley, CA 94704,<br><br>       Plaintiff,<br><br>v.<br><br>THE COCA-COLA COMPANY, 1 Coca Cola Plz NW, Atlanta, GA 30313,<br><br>       Defendant. | Case No. 2021 CA 001846 B<br><br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

On behalf of itself and the general public, and in the interest of consumers, Plaintiff Earth Island Institute, by and through its counsel, brings this action against Defendant The Coca-Cola Company ("Coca-Cola") concerning its false and deceptive marketing representing itself as a sustainable and environmentally friendly company, despite being one of the largest contributors to plastic pollution in the world. Earth Island Institute alleges the following based upon information, belief, and the investigation of its counsel.

## INTRODUCTION

1. Plastic pollution is a global problem and threatens human and environmental health on a massive scale.

2. Consumers within the District and across the country believe that plastic pollution presents significant environmental harms.

3.      Due to these concerns, consumers are reevaluating their choices and the effects of their actions on the environment.

4.      Because of consumers' growing concerns about environmental harms, consumers, as Coca-Cola knows, are willing to seek out services or products that are less harmful to the environment and prefer to support companies that purport to share their values, including a commitment to reducing impact on the environment.

5.      For this reason, some companies that produce significant amounts of plastic pollution are beginning to advertise themselves as environmentally friendly to counter the common consumer perception that certain industries are engaged in activities that cause environmental and human health harms.

6.      Companies that are among the largest plastic polluters are now publicly setting long-term goals to become more "sustainable," develop more effective recycling systems, and move toward a "circular economy,"[1] which would entail radically reimagining production and consumption patterns to eliminate waste.

7.      At the same time, many of these same companies continue to produce plastic waste on an immense scale, placing continued stress on natural environments and human health throughout the world.

8.      Contrary to Coca-Cola's representations, the company remains a major plastic polluter, has made no significant effort to transition to a "circular economy" or to otherwise operate

---

[1] A circular economy "aims to redefine growth, focusing on positive society-wide benefits. It entails gradually decoupling activity from the consumption of finite resources, and designing waste out of the system" to the greatest extent possible. It is based on three broad principles: "Design out waste and pollution . . . Keep products and materials in use . . . [and] regenerate natural systems." *Concept: What is a circular economy? A framework for an economy that is restorative and regenerative by design*, Ellen MacArthur Foundation, https://www.ellenmacarthurfoundation.org/circular-economy/concept (last visited June 3, 2021).

as a "sustainable" enterprise, and has a long history of consistently breaking its public promises on sustainability goals.

9.      Coca-Cola alone generates more plastic waste than **any other company** in the world, producing **2.9 million metric tons** of plastic waste per year,[2] according to a report from the Changing Markets Foundation.[3]

10.     Plastic pollution is now so widespread that a 2019 study commissioned by World Wildlife Fund International estimated that the average person could be consuming upwards of 1,700 particles of plastic every week from water alone, which is equivalent to roughly an entire credit card; the study found plastic fibers in **94.4 percent** of tap water samples in the United States.[4]

11.     Widespread plastic pollution aligns with broader production trends: since 1950, plastic production has skyrocketed from 2.3 million tons to 448 million tons in 2015.[5]

12.     In the face of such high quantities of plastic, recycling has proven overwhelmingly insufficient in addressing global plastic pollution. A mere **9 percent** of all plastic that has been produced since the 1950s has been recycled, while **79 percent** has ended up in landfills or the natural environment.[6]

13.     Coca-Cola has done relatively very little to address the immense problem of global plastic pollution and has even actively opposed legislation proven to improve recycling rates,

---

[2] *Talking Trash: The Corporate Playbook of False Solutions to the Plastic Crisis*, Talking Trash (Sept. 2020), https://talking-trash.com/wp-content/uploads/2020/09/TalkingTrash_FullReport.pdf.
[3] The Changing Markets Foundation works to "expose irresponsible corporate practices and drive change towards a more sustainable economy" through leveraging market forces. *Changing Markets Foundation*, Changing Markets Foundation, https://changingmarkets.org/ (last visited June 3, 2021).
[4] *You may be eating a credit card's worth of plastic each week: study*, Reuters (June 11, 2019, 8:07 PM), https://www.reuters.com/article/us-environment-plastic/you-may-be-eating-a-credit-cards-worth-of-plastic-each-week-study-idUSKCN1TD009.
[5] *Talking Trash*, *supra* note 2.
[6] *Id.*; Plastic enters the natural world at a rate of 8 million tons per year, or approximately one garbage truck per minute, *Id.*

-3-

COMPLAINT

instead using third-party organizations to place responsibility for plastic pollution on individual consumers.

14.     Moreover, plastic products are inherently harmful to the environment: as a fossil-fuel based material, plastic production requires extracting, transporting, and refining fossil fuels, processes which often emit significant amounts of greenhouse gases into the atmosphere and exacerbate the already-pronounced greenhouse gas effect.

15.     Consequently, Coca-Cola will never be a truly "sustainable" company unless it moves away from its reliance on single-use plastic entirely, which it has no plans to do.

16.     No reasonable consumer who sees Coca-Cola's representations would expect the steps that Coca-Cola is taking to combat plastic pollution to be so insignificant relative to the scale at which its plastic pollution occurs.

17.     By deceiving consumers about the nature and quality of the products that it produces and sells, as well as about the nature of its underlying business practices, Coca-Cola is able to capture the growing market of consumers in D.C. and elsewhere who are concerned about plastic pollution and seek to support environmentally friendly businesses.

18.     Coca-Cola's false and misleading representations and omissions violate the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, *et seq.*

19.     Because Coca-Cola's marketing and advertising tend to mislead and are materially deceptive about the true nature and quality of its products and business, Earth Island Institute brings this deceptive advertising case on behalf of itself and the general public pursuant to the CPPA.

## STATUTORY FRAMEWORK

20.     This action is brought under the District of Columbia Consumer Protection Procedures Act ("CPPA") D.C. Code § 28-3901, *et seq.*

21.     The CPPA makes it a violation for "any person" to, *inter alia*:

Represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

Represent that goods or services are of a particular standard, quality, grade, style, or model, if in fact they are of another;

Misrepresent as to a material fact which has a tendency to mislead;

Fail to state a material fact if such failure tends to mislead;

Use innuendo or ambiguity as to a material fact, which has a tendency to mislead; or

Advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

D.C. Code § 28-3904(a), (d), (e), (f), (f-1), (h).

22.     A violation occurs regardless of "whether or not any consumer is in fact misled, deceived or damaged thereby." *Id.*

23.     The CPPA "establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia." *Id.* § 28-3901(c). It "shall be construed and applied liberally to promote its purpose." *Id.*

24.     Because Earth Island Institute is a public-interest organization, it may act on behalf of the general public and bring any action that an individual consumer would be entitled to bring:

[A] public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under

subparagraph (A) of this paragraph for relief from such use by such person of such trade practice.

*Id.* § 28-3905(k)(1)(D)(i). Subparagraph (A) provides: "A consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District."

25.     A public-interest organization may act on behalf of consumers, *i.e.*, the general public of the District of Columbia, so long as the organization has a "sufficient nexus to the interests involved of the consumer or class to adequately represent those interests." *Id.* § 28-3905(k)(1)(D)(ii). As set forth in this Complaint, *see infra* ¶¶ 136-145, Plaintiff Earth Island Institute's mission includes educating consumers, including in the District of Columbia, and engaging in advocacy related to environmental and human health issues. Earth Island Institute thus has a sufficient nexus to D.C. consumers to adequately represent their interests.

26.     This is not a class action, or an action brought on behalf of any specific consumer, but an action brought by Earth Island Institute on behalf of the general public, *i.e.*, D.C. consumers generally. No class certification will be requested.

27.     This action does not seek damages. Instead, Earth Island Institute seeks to end the unlawful conduct directed at D.C. consumers. Remedies available under the CPPA include "[a]n injunction against the use of the unlawful trade practice." *Id.* § 28-3905(k)(2)(D). Earth Island Institute also seeks declaratory relief in the form of an order holding Coca-Cola's conduct to be unlawful.

## FACT ALLEGATIONS

28.     Coca-Cola's marketing is false and deceptive because the company portrays itself as "sustainable" and committed to reducing plastic pollution while polluting more than any other beverage company and actively working to prevent effective recycling measures in the U.S.

29.     Coca-Cola knows that consumers increasingly and deliberately seek out products and services from environmentally responsible companies.[7]

30.     Accordingly, Coca-Cola cultivates an environmentally friendly image for consumers who wish to avoid harm to our planet, in order to motivate climate-concerned consumers to continue to purchase its products and services.

**I.      Coca-Cola Represents the Company as Unqualifiedly "Sustainable" and Claims to "Take Responsibility" for Its Plastic.**

31.     Coca-Cola purports to be an environmentally conscious company that works to protect the interests of the planet.

32.     On its website, Coca-Cola writes: "Our planet matters. We act in ways to create a more sustainable and better shared future. To make a difference in people's lives, communities and our planet by doing business the right way."[8]



---

[7]     *See, e.g., The Sustainability Imperative,* Nielsen (Oct. 2015), https://nielseniq.com/global/en/insights/analysis/2015/the-sustainability-imperative-2/ (consumer survey finding that the majority of consumers seek to support sustainable business practices with their purchases and are more likely to buy products "from a company known for being environmentally friendly.").

[8] *Sustainable Business,* The Coca-Cola Company, https://www.coca-colacompany.com/sustainable-business (last visited June 3, 2021).

33.     In a Tweet from September 2020, Coca-Cola claimed that "Scaling sustainability solutions and partnering with others is a focus of ours."[9]



_____

[9]     @CocaColaCo,     Twitter     (Sept.     24,     2020,     9:01     AM), https://twitter.com/cocacolaco/status/1309115717204226055.

COMPLAINT

34.     Another Tweet from April 2019 writes that "Business and sustainability are not separate stories for The Coca-Cola Company – but different facets of the same story."[10]



35.     Similarly, its 2019 Business & Sustainability Report says: "We're using our leadership to achieve positive change in the world and build a more sustainable future for our communities and our planet."[11]

---

[10]     @CocaColaCo, Twitter (Apr. 24, 2019, 4:20 PM), https://twitter.com/CocaColaCo/status/1121146826873298945.
[11]     *2019 Business & Sustainability Report*, The Coca-Cola Company (Apr. 2020), https://www.coca-colacompany.com/content/dam/journey/us/en/reports/coca-cola-business-and-sustainability-report-2019.pdf.

36.     James Quincey, Chairman and Chief Executive Officer of Coca-Cola, said in the same report: "I'm reminded of the power of our people to make a difference, to serve our communities and to constantly work to shape a more sustainable business."[12]

37.     Coca-Cola also makes various claims about "taking responsibility" for the plastic waste that it produces, as well as bottle collection goals that entail "getting every bottle back."

38.     The company emphasizes bottle collection and recycling as a solution to global plastic pollution, implying that increasing bottle recyclability and bolstering local recycling systems are sufficient steps in transitioning toward a "circular economy."

39.     These various claims lead consumers to believe that Coca-Cola is dedicated to reducing plastic pollution, and that purchasing beverages from Coca-Cola supports initiatives aimed at reducing plastic waste.

40.     For instance, Coca-Cola's website claims that it is "[C]ommitted to creating a World Without Waste by taking responsibility for the packaging we introduce to markets and working to reduce ocean pollution."[13]

---

[12] *Id.*

[13] *Progress Against a World Without Waste: Holding Ourselves Accountable*, The Coca-Cola Company (Oct. 9, 2018), https://www.coca-colacompany.com/news/progress-against-a-world-without-waste.

COMPLAINT



We're committed to creating a World Without Waste by taking responsibility for the packaging we introduce to markets and working to reduce ocean pollution. Below are a few highlights of progress we've made this year.

41.     In its 2019 Business & Sustainability Report Coca-Cola says: "Because our company is in so many communities globally, we can share our best practices. We can collaborate with governments, communities, the private sector, and NGOs to help develop more effective recycling systems that meet each community's unique needs."[14]

42.     Coca-Cola also touts ambitious bottle collection goals on its website and other marketing materials, reinforcing the idea that the company is taking personal responsibility for the plastic waste that it produces.

43.     For example, the company advertises on its website that it aims to "Collect and recycle a bottle or can for each one we sell by 2030."[15]

---

[14] *2019 Business & Sustainability Report, supra* note 11.
[15]     *Sustainable Packaging Collection Strategy*, The Coca-Cola Company, https://www.coca-colacompany.com/sustainable-business/packaging-sustainability/collect (last visited June 3, 2021).



44.     On its website, Coca-Cola also states that "The interconnected global challenges of packaging waste and climate change have made this a focus that we are taking a leadership position on."[16]

---

[16]  *Sustainable Packaging*, The Coca-Cola Company, https://www.coca-colacompany.com/sustainable-business/packaging-sustainability#:~:text=executive%20focus.%E2%80%8B-,World%20Without%20Waste,how%20we%20can%20drive%20change (last visited June 3, 2021).

COMPLAINT



45.     A Tweet from February 2020 says: "Part of our sustainability plan is to help collect and recycle a bottle or can for every one we sell globally by 2030."[17]



46.     Moreover, as part of its involvement in the "Every Bottle Back" campaign with the

---

[17] @CocaCola, Twitter (Feb. 3, 2020, 10:38 AM), https://twitter.com/CocaCola/status/1224356370708881411.

COMPLAINT

American Beverage Association and other large beverage companies, Coca-Cola claims that it is "… committed to getting *every bottle back*."[18]

 

## OUR NEW INITIATIVE:
# TOGETHER, WE'RE COMMITTED TO GETTING *EVERY BOTTLE BACK*

Our plastic bottles are made to be remade. We are carefully designing them to be 100% recyclable – even the caps. Our goal is for every bottle to become a new bottle, and not end up in oceans, rivers, beaches and landfills. And that means we are using less new plastic.

That's why America's beverage companies have launched a *new initiative to get Every Bottle Back*. This unprecedented commitment includes:

- Working with World Wildlife Fund through the *ReSource: Plastic* initiative to reduce our plastic footprint.

- Partnering with The Recycling Partnership and Closed Loop Partners to improve recycling access, provide education to residents and modernize the recycling infrastructure in communities across the country.

- Increasing awareness about the value of our 100% recyclable plastic bottles.

- Introducing a new voluntary on-pack message to promote the recyclability of our plastic bottles and caps.

### SEE HOW WE'RE DOING IT

47.     In a video produced in partnership with the American Beverage Association, Coca-Cola, Dr. Pepper, and Pepsi promote their "Every Bottle Back" initiative. The narrators in the video say:

> We need to reduce plastic waste in the environment. That's why at American beverage companies, our bottles are made to be remade. Not all plastic is the same. We're carefully designing our bottles to be 100% recyclable, including the caps. They're collected and separated from other plastics so they can be turned back into materials that we use to make new bottles. That completes the circle and reduces plastic waste. Please help us get every

---

[18] *Our New Initiative: Together, We're Committed To Getting Every Bottle Back*, American Beverage Association, https://www.innovationnaturally.org/plastic/ (last visited June 3, 2021).

bottle back.[19]

48.     On another webpage dedicated to the "Every Bottle Back" initiative, the site displays a person in a Coca-Cola uniform alongside the text: "Together, America's beverage companies are committed to reducing plastic waste in our environment."[20]



49.     Through this advertising approach—presenting itself both individually and as a member of the American Beverage Association—Coca Cola portrays itself as committed to the principles of a circular economy and taking personal responsibility for the plastic waste it produces.

50.     Coca-Cola has also issued a variety of commitments regarding the recyclability of its plastic products, as well as promoted new plant-based bottles as evidence of its commitment to sustainability.

---

[19] *We Are America's Beverage Companies*, American Beverage Association, https://www.americanbeverage.org/ (last visited June 3, 2021).

[20] *Our Bottles Are Made To Be Remade: Every Bottle Back*, American Beverage Association, https://www.innovationnaturally.org/every-bottle-back/ (last visited June 3, 2021).

51.   On Coca-Cola's webpage entitled "Sustainable Packaging Design," the company claims that it will "Make 100% of our packaging recyclable globally by 2025. [And] [u]se at least 50% recycled material in our packaging by 2030."[21]



52.   In a similar vein, in October of 2020, Coca-Cola announced its partnership with Danish startup Paboco to develop a 100 percent paper bottle.[22]

---

[21] *Sustainable Packaging Design*, The Coca-Cola Company, https://www.coca-colacompany.com/sustainable-business/packaging-sustainability/design (last visited June 3, 2021).

[22] *Coca-Cola Unveils Paper Bottle Prototype*, The Coca-Cola Company, https://www.coca-colacompany.com/news/coca-cola-unveils-paper-bottle-prototype (last visited June 3, 2021).

THE *Coca-Cola* COMPANY

## Coca-Cola Unveils Paper Bottle Prototype

🕐 4 MIN READ | 11/06/2020





Coca-Cola is partnering with Danish startup Paboco to develop a 100% paper bottle.

53.   The first-generation prototype featured a paper shell with a 100 percent recycled plastic closure and liner inside of the bottle, with future iterations projected to be entirely "bio-based."

54.   Coca-Cola positions this effort as evidence of its commitment to finding more sustainable alternatives to its PET-bottle production, apparently a meaningful step in moving toward a "World Without Waste."[23]

---

[23] "World Without Waste" is the name of one of Coca-Cola's environmental programs. As part of the program, Coca-Cola has pledged to make its packaging 100 percent recyclable by 2025 and use 50 percent recycled material in its bottles and cans by 2030, as well as collect a bottle or can for each one the company sells by 2030. *Question: What is World Without Waste?*, The Coca-Cola Company, https://www.coca-colacompany.com/faqs/what-is-world-without-waste (last visited June 3, 2021).

COMPLAINT

55.    Coca-Cola also published in its Business & Sustainability Report from 2019: "We are fundamentally rethinking how we get our products to consumers, including what kind of packaging to use and whether a package is needed at all."[24]

56.    The various claims highlighted here give consumers the impression that Coca-Cola is taking unprecedented and serious steps to "take responsibility" for its own plastic pollution; increase bottle collection rates; and ultimately reimagine patterns of plastic consumption by developing new bottle technology.

**II.    Coca-Cola's Practices Are Categorically Unsustainable and Environmentally Harmful.**

57.    Contrary to Coca-Cola's representations, the company is far from what consumers would understand to be a sustainable business.

58.    As previously noted, Coca-Cola is the world's leading plastic waste producer, generating *2.9 million metric tons* of plastic waste each year.[25]

59.    This amounts to Coca-Cola using *200,000 bottles per minute*, which constitutes approximately one-fifth of the entire world's polyethylene terephthalate ("PET")-bottle output.[26]

60.    Furthermore, Coca-Cola is responsible for *200,000 tons* of plastic pollution per year—the equivalent of thirty-three football pitches every day.[27]

61.    The entire life cycle of plastic presents serious risks to human health, and has been shown to contribute to cancer, neurotoxicity, reproductive issues, endocrine disruption, and genetic problems.[28]

---

[24] *2019 Business & Sustainability Report, supra* note 11.
[25] *Talking Trash, supra* note 2.
[26] *Id.*
[27] *Id.*
[28] *Id.*

COMPLAINT

62.     Plastic pollution also presents an unprecedented crisis for wildlife throughout the world. Many animals (and especially marine life) ingest large quantities of plastic materials that enter the natural environment, wreaking havoc on their digestive systems and overall health.

63.     A study from 2014 found that over 270 marine species have experienced impaired movement, starvation, or death due to ingestion or entanglement in plastic debris.[29]

64.     Furthermore, plastics have incredibly carbon-intensive life cycles.[30]

65.     Plastic production requires fossil fuel extraction and distillation; plastic products themselves are constituted from fossil fuels, and after production must be transported to market.[31]

66.     Additionally, dumping, incinerating, recycling, or composting (certain) plastics all release carbon dioxide ($CO_2$), a powerful greenhouse gas.[32]

67.     Researchers at the University of California, Santa Barbara found that in 2015, life cycle emissions from plastics were equivalent to nearly *1.8 billion metric tons* of $CO_2$.[33]

68.     Plastics' reliance on limited and environmentally harmful fossil fuel resources precludes the materials from ever being truly sustainable, particularly on the large scale at which Coca-Cola's plastic use operates.

69.     Therefore, Coca-Cola is categorically not a sustainable company and misleads consumers in presenting itself as such. The company produces an incredible amount of plastic

---

[29] Michelle Sigler, *The Effects of Plastic Pollution on Aquatic Wildlife: Current Situations and Future Solutions*, Water Air Soil Pollution (Oct. 18, 2014), https://projectdragonfly.miamioh.edu/wp-content/uploads/2019/06/Sigler_Michelle_Water-Air-Soil-Pollut_2014.pdf.

[30] *Plastic's carbon footprint: Researchers conduct first global assessment of the life cycle greenhouse gas emissions from plastics*, Science Daily (Apr. 15, 2019), https://www.sciencedaily.com/releases/2019/04/190415144004.htm#:~:text=Plastics%20have%20surprisingly%20carbon%2Dintense%20life%20cycles.&text=Dumping%2C%20incinerating%2C%20recycling%20and%20composting,expect%20this%20number%20to%20grow.

[31] *Id.*

[32] *Id.*

[33] *Id.*

pollution and fails to take responsibility for its own waste, despite its representations to the contrary.

### a. Recycling is Not an Unqualified Solution to Global Plastic Pollution.

70.     Coca-Cola advances recycling as a straightforward solution to plastic pollution and claims that it is working to "take responsibility" for its contribution to plastic pollution.

71.     But various reports have found that Coca-Cola has not taken significant action to take responsibility for its own plastic waste, and the company has in fact actively opposed legislation in the United States that would improve recycling rates.

72.     As it exists right now, recycling infrastructure in the United States is incapable of keeping pace with Coca-Cola's incredibly high production rates.

73.     Market.us estimates that Coca-Cola sells *1.8 billion bottles per day*, and that globally, people consume over 10,000 soft drinks from Coca-Cola *every second of every day*.[34]

74.     And despite Coca-Cola's heavy emphasis on recycling in its advertising and online representations, the vast majority of its bottles end up in landfills or entering the natural environment as pollution.

75.     The EPA estimated that in 2018 only 8.7 percent of all recyclable plastics in the United States were recycled, with a rate among PET bottles and jars of 29.1 percent.[35]

---

[34] *Coca-Cola Company Statistics and Facts*, Market.us (Sept. 28, 2020), https://market.us/statistics/food-and-beverage-companies/coca-cola-company/#:~:text=Coke%20sold%2025%20bottles%20its,each%20of%20its%2020%20brands.

[35] *Facts and Figures about Materials, Waste and Recycling*, United States Environmental Protection Agency, https://www.epa.gov/facts-and-figures-about-materials-waste-and-recycling/plastics-material-specific-data#:~:text=While%20overall%20the%20amount%20of,plastic%20containers%20is%20more%20significant   (last visited June 3, 2021).

76.     Low rates of recycling mean that a vast amount of recyclable plastic ends up in landfills or enters the natural environment.[36]

77.     The EPA estimated that landfills in the United States received ***27 million tons of plastic*** in 2018.[37] The figure below[38] illustrates the relative share of plastics that are recycled versus those that enter landfills each year:



78.     And out of the many categories of plastics, containers and packaging (which includes the PET bottles that Coca-Cola produces) accounted for ***more than half*** of the plastics that ended up in landfills.[39]

79.     More generally, Coca-Cola greatly overstates the efficacy of recycling in addressing the plastics crisis as well as its own contributions to improving recycling rates.

---

[36] *Talking Trash*, *supra* note 2.
[37] *Facts and Figures About Materials, Waste and Recycling*, *supra* note 35.
[38] *Id.*
[39] *Id.*

80. The plastics industry has known that plastics are both environmentally and economically unsustainable for over forty years.

81. NPR reported in September 2020 that a plastic industry insider wrote in a speech in 1974 that "There is serious doubt that [recycling plastic] can ever be made viable on an economic basis."[40]

82. Despite the well-publicized shortcomings of recycling, Coca-Cola and other large plastic producers have consistently pushed recycling as an unqualified solution to the plastics crisis since the 1970s.

83. Larry Thomas, former president of the Society of the Plastics Industry (today known as the Plastics Industry Association) told NPR: "If the public thinks that recycling is working, then they are not going to be as concerned about the environment."[41]

84. Coca-Cola's recycling advertisements aim to assuage consumers' growing concerns about the environmental harms associated with the company's business, convincing consumers that there are no significant environmental consequences associated with purchasing single-use plastic as long as they dispose of the material in a responsible manner.

85. But a very small portion of plastic materials are recycled, even if consumers dispose of them properly.

86. As previously mentioned, only approximately 30 percent of PET bottles were recycled in 2018 in the United States.[42]

---

[40] *Id.*
[41] *Id.*
[42] *Facts and Figures about Materials, Waste and Recycling, supra* note 35.

87.     There are various factors that contribute to the United States' notoriously low recycling rate. In large part, the economics of plastic production and recycling drive low recycling rates; it is far cheaper to produce virgin plastic than to pay for the various processes required to recycle existing plastic in the United States.[43]

88.     An article in the New York Times from March 2019 reported that hundreds of towns and cities throughout the United States have cancelled their recycling programs, limited the types of materials they accepted, or agreed to substantial price increases to continue their recycling programs.[44]

89.     The changes to recycling prices came in large part from China's decision to bar plastics slated for recycling from entering the country in January of 2018; prior to that point, the United States had been exporting hundreds of thousands of tons of recyclable materials each year to China.[45]

90.     Waste management companies and municipalities have since been struggling to find buyers for recyclable materials, and it is often more economical for them to send recyclable materials to landfills rather than pay to sort, clean, shred, and melt them for reuse.[46]

91.     More recently, the global COVID-19 pandemic decreased the cost of fossil fuels, exacerbating the difference in cost between virgin plastic and recycled plastic.

---

[43] Laura Sullivan, *How Big Oil Misled The Public Into Believing Plastic Would Be Recycled*, NPR (Sept. 11, 2020, 5:00 AM ET), https://www.npr.org/2020/09/11/897692090/how-big-oil-misled-the-public-into-believing-plastic-would-be-recycled; John Hocevar, *Circular Claims Fall Flat: Comprehensive U.S. Survey of Plastics Recyclability*, Greenpeace (Feb. 18, 2020), https://www.greenpeace.org/usa/wp-content/uploads/2020/02/Greenpeace-Report-Circular-Claims-Fall-Flat.pdf.

[44] Michael Corkery, *As Costs Skyrocket, More U.S. Cities Stop Recycling*, The New York Times (Mar. 16, 2019), https://www.nytimes.com/2019/03/16/business/local-recycling-costs.html.

[45] *Id;* Christopher Joyce, *Where Will Your Plastic Trash Go Now That China Doesn't Want It?*, NPR (Mar. 13, 2019, 4:28 PM ET), https://www.npr.org/sections/goatsandsoda/2019/03/13/702501726/where-will-your-plastic-trash-go-now-that-china-doesnt-want-it; John Hocevar, *supra* note 43.

[46] Alana Semuels, *Is This the End of Recycling?*, The Atlantic (Mar. 5, 2019), https://www.theatlantic.com/technology/archive/2019/03/china-has-stopped-accepting-our-trash/584131/.

92.     A market analysis at the Independent Commodity Intelligence Services estimated that as of October 2020, it was approximately ***83 percent to 93 percent more expensive*** to use recycled bottle-grade plastic than to produce it new.[47]

93.     Plastic also degrades with each use, leaving each bottle of recycled plastic of a lesser quality than its former iteration.[48]

94.     All of these traits stand in contrast to Coca-Cola's representations that recycling PET bottles is a clear-cut solution to the plastics crisis.

95.     In a February 2020 report published by Greenpeace, marine biologist and director of the organization's oceans campaign John Hocevar wrote that "Companies must move beyond the outdated, failed approach of promoting recycling as the solution to excessive plastic waste and pollution. . . . Instead of pretending that the trillions of throwaway plastic items produced each year will be recycled or composted, we must stop producing so many of them in the first place."[49]

96.     Coca-Cola has established no strategy to meaningfully reduce its plastic pollution footprint and misrepresents its contributions to improving recycling processes throughout the United States, as well as exaggerates the role of recycling in addressing global plastic pollution more broadly.

    **b.  Coca-Cola Opposes Legislation that Improves Bottle Recovery Rates, Failing to "Take Responsibility" for Its Contribution to Plastic Pollution.**

97.     Despite its promise to "take responsibility" for its own plastic waste through enhanced bottle recovery, Coca-Cola has opposed legislation that has been proven to deliver higher rates of bottle recovery.

---

[47] Joe Brock, *Special Report: Plastic pandemic – COVID-19 trashed the recycling dream,* Reuters (Oct. 5, 2020, 7:13 AM), https://www.reuters.com/article/health-coronavirus-plastic-recycling-spe-idUSKBN26Q1LO.

[48] *Id.*

[49] John Hocevar, *supra* note 43.

98.    In fact, Coca-Cola has made various promises regarding bottle recovery and collection in the past and has made very limited progress on fulfilling them.[50]

99.    For instance, a 2020 Changing Markets Foundation report classified Coca-Cola's commitment to "Recover 50% of the equivalent bottles and cans sold annually by 2015" as a "broken promise," because the company failed to reach this goal by the designated time.[51]

100.    In 2007 Coca-Cola promised to "Recycle or reuse all the plastic bottles used in the U.S. market."[52]

101.    Changing Markets Foundation classified this commitment as an "empty promise," given that there was "No final date for achieving this goal nor is it a global commitment across all markets."[53]

102.    Advancing targets with neither clear parameters nor methodology for measuring the company's progress allows Coca-Cola to portray itself as significantly more environmentally conscious than it is.

103.    Furthermore, Coca-Cola has not meaningfully worked to implement legislation or measures that would help to meet its self-proclaimed goal to get "every bottle back."

104.    A 2020 report from the Changing Markets Foundation found that the company had not yet called for comprehensive legislation to mandate over 90 percent separate collection of plastic bottles, a crucial first step in fulfilling Coca-Cola's own goal to collect and recycle a bottle or can for each one that the company sells.[54]

---

[50] *Talking Trash*, *supra* note 2.
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Talking Trash, supra* note 2; Currently, only ten states have state container deposit laws, not nearly enough to achieve the lofty goal of 90% separate collection that Coca-Cola sets. *State Beverage Container Deposit Laws,*

105.     In fact, far from sharing its "best practices" to "help develop more effective recycling systems,"[55] Coca-Cola actively opposes container deposit laws, known widely as "bottle bills" in the United States, which have been shown to greatly increase bottle collection and recycling rates.[56]

106.     Bottle bills impose a small fee on each bottle sale which is returned to the consumer upon giving the bottle to a recycling facility, which incentivizes its return. Such a structure often also imposes a small handling fee on beverage distributors for processing empty containers, making it slightly more expensive for distributors like Coca-Cola to sell their products.[57]

107.     Although Coca-Cola has expressed that it is no longer opposed to bottle bills, the New York Times recently reported that at a meeting for the organization Atlanta Recycles, recycling experts expressed fears that Coca-Cola would withdraw funding from the organization should they pursue a bottle bill in the state.[58]

108.     Gloria Hardegree, executive director of the Georgia Recycling Coalition, an organization that receives funding from Coca-Cola said: "With the investment that Coke is getting ready to make in Atlanta and in other major cities across the U.S. with this World Without Waste, it is not going to be a part of that conversation [on a bottle bill]."[59]

---

National Conference of State Legislatures (Mar. 13, 2020), https://www.ncsl.org/research/environment-and-natural-resources/state-beverage-container-laws.aspx.

[55] *2019 Business & Sustainability Report*, *supra* note 11.

[56] Michael Corkery, *Beverage Companies Embrace Recycling, Until It Costs Them*, The New York Times, https://www.nytimes.com/2019/07/04/business/plastic-recycling-bottle-bills.html (last visited June 3, 2021).

[57] *Id.*

[58] *Id.*

[59] Sharon Lerner, *Leaked Audio Reveals How Coca-Cola Undermines Plastic Recycling Efforts*, The Intercept (Oct. 18, 2019, 10:45 AM), https://theintercept.com/2019/10/18/coca-cola-recycling-plastics-pollution/.

COMPLAINT

109.     Coca-Cola has also repeatedly failed to take responsibility for its own plastic waste through supporting organizations that place undue emphasis on individual consumers' role in the global plastics crisis.

110.     For example, Coca-Cola has long held ties to the organization, Keep America Beautiful, a pro-recycling organization founded in the early 1950s by several prominent plastics producers and citizens.

111.     Keep America Beautiful lists various corporate sponsors on its website, including Coca-Cola, Nestlé, Keurig Dr. Pepper, and other prominent plastic-producing companies.[60]

112.     According to the Keep America Beautiful website, the organization's mission is "To inspire and educate people to take action every day to improve and beautify their community environment."[61]

113.     Since its inception, Keep America Beautiful has worked to achieve its mission by placing outsize emphasis on the role of individual consumers in reducing plastic pollution, rather than addressing the source of plastic itself—the producers.

114.     Starting with advertisements produced in collaboration with the Ad Council in 1960, Keep America Beautiful has advanced taglines such as "Every litter bit hurts," and "Don't be a litterbug."[62]

115.     Its most recent campaign, "I Want To Be Recycled," offers tips on how to become an "everyday" recycler and help to divert waste from entering into landfills.

---

[60] *Our Partners*, Keep America Beautiful, https://kab.org/about/partners/?field_partner_type_tid=28 (last visited June 3, 2021).

[61] *Mission & History*, Keep America Beautiful, https://kab.org/about/approach/mission-history/ (last visited June 3, 2021).

[62] Jane L. Levere, *After the 'Crying Indian,' Keep America Beautiful Starts a New Campaign*, The New York Times (July 16, 2013), https://www.nytimes.com/2013/07/17/business/media/decades-after-a-memorable-campaign-keep-america-beautiful-returns.html.

116.    This campaign fails to acknowledge, however, that a significant portion of recyclable materials from its sponsors—regardless of whether consumers dispose of them correctly—end up in landfills or the natural environment.[63]

117.    In supporting Keep America Beautiful, Coca-Cola has contributed to misleading the public into believing that everyday consumers are to blame for the plastics crisis, rather than insufficient recycling infrastructure and the corporations producing the plastics.

118.    Coca-Cola does very little to "take responsibility" for the plastic waste that it produces and continues to place outsize responsibility on individual consumers for plastic pollution through campaigns such as those that Keep America Beautiful promotes.

119.    Furthermore, recycling is an extremely limited approach to curbing the vast amount of plastic waste that is entering landfills and the natural environment.

120.    Coca-Cola misleads consumers by overstating the benefits of recycling, as well as the capacity and ability of waste management companies and municipalities to economically recycle the large amount of PET bottle waste that companies such as Coca-Cola produce.

121.    In reality, recycling rates are subject to various factors, including economic viability, the infrastructure and capacity of the applicable recycling facilities, and the inability of recycling facilities to recycle more novel forms of packaging, such as bottles with sleeves.[64]

122.    In marketing its products as unqualified "recyclable," Coca-Cola's messaging to consumers obfuscates these complexities and how they affect recycling rates, and in turn, the sustainability of Coca-Cola's products.

---

[63] Livia Albeck-Ripka, *Your Recycling Gets Recycled, Right? Maybe, or Maybe Not*, The New York Times (May 29, 2018), https://www.nytimes.com/2018/05/29/climate/recycling-landfills-plastic-papers.html.
[64] John Hocevar, *supra* note 43.

**c. Coca-Cola's Bottle Recyclability Metrics and New "Sustainable" Bottle Technology Are Insufficient to Offset the Company's Contribution to Plastic Waste.**

123.     Like the company's targets relating to bottle collection, recycled content goals are not new to Coca-Cola's advertising strategy.

124.     Changing Market Foundation's 2020 report on plastic pollution identifies the first recycled content goal that Coca-Cola issued in 1990 to "Include 25% recycled plastic content" in its bottles throughout the U.S. market.[65]

125.     According to the report, Coca-Cola shortly afterward reduced its 25 percent recycled plastic content goal to just 10 percent, while also delaying the timing to the end of 2005. Under the new stipulations, Coca-Cola still did not fulfill the 10 percent recycled plastic content goal by the end of 2005: its own 2006 CSR report claimed only 3.6 percent recycled plastic content in its products in the U.S. market.[66]

126.     And despite Coca-Cola's claims that it is considering "whether a package is needed at all"[67] for its products, the company has no intention to meaningfully shift away from its reliance on plastic.

127.     In January of 2020, Coca-Cola's Head of Sustainability, Bea Perez, said that the company will not abandon single-use plastic bottles due to the company's perception that consumers prefer plastic bottles to alternatives.[68]

128.     The promises that Coca-Cola advertises on its website, then, are largely without significant impact on the amount of plastic pollution that the company produces.

---

[65] *Talking Trash, supra* note 2.
[66] *Id.*
[67] *2019 Business & Sustainability Report, supra* note 11.
[68] Daniel Thomas, *Davos 2020: People still want plastic bottles, says Coca-Cola,* BBC (Jan. 21, 2020), https://www.bbc.com/news/business-51197463.

129.    By opposing meaningful legislation that increases PET recycling rates, while simultaneously advancing recycling as an unqualified solution to plastic pollution, Coca-Cola misrepresents the company's role in reducing plastic pollution.

130.    Despite its claims to the contrary, Coca-Cola is not meaningfully dedicated to reducing the harmful impacts of its business and shifting away from single-use plastic.

## III.   Coca-Cola's Representations Are Material and Misleading to Consumers.

131.    Coca-Cola's false and misleading representations about the degree to which its business is sustainable are material to consumers.

132.    Consumers care deeply about environmental issues and are more likely to purchase products that they perceive as environmentally friendly.[69]

133.    A 2019 study conducted by Coleman Parkes Research on behalf of Accenture surveyed 1,500 consumers in seventeen cities throughout the United States. Forty-seven percent of consumers surveyed expressed a desire to conduct business with retailers that were environmentally conscious.[70]

134.    The desire for sustainable products is especially pronounced among younger consumers; a study from the International Trademark Association from 2018 found that 89 percent of internet users ages 18 to 23 felt that brands should aim to do good in the world.[71]

135.    Coca-Cola's business practices fall far short of what consumers would expect from a "sustainable" company. Its advertising strategies mislead consumers into believing that Coca-

---

[69] *The Sustainability Imperative*, *supra* note 7.

[70] Lucy Koch, *Sustainability Is Factoring into 2019 Holiday Purchases*, eMarketer (Oct. 14, 2019), https://www.emarketer.com/content/sustainability-is-factoring-into-2019-holiday-purchases?_ga=2.170357734.731468461.1617378067-462530432.1615825431.

[71] *Id.*

Cola prioritizes environmental health, capturing a growing class of consumers who wish to support environmentally sustainable companies.

## PARTIES

136.     Plaintiff Earth Island Institute is a 501(c)(3) non-profit, public-interest organization whose mission is to advocate for environmental and human health through activist projects, legal advocacy, leadership, and an award-winning journal.

137.     Earth Island Institute is based in Berkeley, California and performs its work throughout the United States, including in the District of Columbia.

138.     Earth Island Institute was founded in 1982 as a non-profit organization meant to inform the public about salient environmental harms and has since worked, among other things, to protect marine life; confront plastic pollution; preserve forests; help indigenous leaders protect their sacred sites; and restore wetlands.

139.     As part of its mission, Earth Island Institute acts as a fiscal sponsor to projects that counteract threats to the biological and cultural diversity that sustains the environment.

140.     Projects that are fiscally sponsored by Earth Island Institute are legally part of Earth Island Institute. All project assets belong to Earth Island Institute and a project's staff are employees of Earth Island Institute.

141.     One of Earth Island Institute's fiscally sponsored projects is Plastic Pollution Coalition ("PPC").

142.     PPC is a global alliance of more than 1,200 organizations, businesses, and thought leaders working towards a more just and equitable world free of plastic pollution and its toxic impacts on humans, animals, waterways, oceans, and the environment.

143.     PPC advocates for a transition away from single-use plastic and educates

consumers, including those within the District of Columbia, on the environmental and health impacts of single-use plastic across its entire life cycle as well as alternatives to single-use plastic. PPC's efforts help consumers make informed choices when they shop. PPC's website, public education, research, network building, and mobilization activities provide an important service to consumers and community activists.

144.    Earth Island Institute, including PPC, has a strong interest in truth-in-advertising regarding environmental concerns. The organization diligently works to promote ecological systems that are clean, accessible, and free of contamination.

145.    Consequently, Earth Island Institute, through PPC's work, has a sufficient nexus to consumers of Coca-Cola's services to adequately represent those interests.

146.    Defendant Coca-Cola is one of the largest plastic-producing companies in the world and owns a variety of beverage brands.

147.    At all times mentioned herein, Coca-Cola was and is a publicly traded corporation incorporated in Georgia and maintains its headquarters in Atlanta, Georgia. Defendant was and is, at all relevant times, engaged in commercial transactions throughout the District of Columbia.

148.    Coca-Cola markets and sells its products and services in the District of Columbia and throughout the United States.

149.    Upon information and belief, Coca-Cola has caused harm to the general public of the District of Columbia.

150.    Earth Island Institute is acting on behalf of itself and for the benefit of the general public as a private attorney general pursuant to D.C. Code § 28-3905(k)(1). Earth Island Institute is a public-interest organization pursuant to D.C. Code § 28-3901(a)(15).

**JURISDICTION AND VENUE**

151.    This Court has personal jurisdiction over the parties in this case. Plaintiff Earth Island Institute, by filing this Complaint, consents to this Court having personal jurisdiction over it.

152.    This Court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-423. Defendant has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over it because, *inter alia*, Coca-Cola is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in the District of Columbia, or otherwise purposefully avails itself of the laws of this District through its marketing and sales of its products and services in this District.

153.    This Court has subject matter jurisdiction over this action pursuant to D.C. Code §§ 28-3905(k)(1)(B), (k)(1)(D), and (k)(2).

**CAUSE OF ACTION**

***Violations of The District of Columbia Consumer Protection Procedures Act***

154.    Pursuant to D.C. Code §§ 28-3905(k)(1) and 28-3905(k)(2), Plaintiff Earth Island Institute brings this Count against Coca-Cola on behalf of itself, its members, and the general public of the District of Columbia, for Coca-Cola's violation of the CPPA, D.C. Code § 28-3901, *et seq*.

155.    Plaintiff incorporates by reference all the allegations in the preceding paragraphs of this Complaint.

156.    Coca-Cola represents itself as a sustainable company while polluting more plastic than any other company in the world.

157.    Coca-Cola's advertising misrepresents, tends to mislead, and omits facts regarding

the characteristics, standard, quality, and grade of its business practices and the products and services it sells.

158.    Coca-Cola's products, services, and business practices lack the characteristics, benefits, standards, qualities, or grades that Coca-Cola states and implies in its advertisements.

159.    Coca-Cola knowingly did not sell its products and services as advertised.

160.    The facts, as alleged above, demonstrate that Coca-Cola has violated the CPPA, D.C. Code § 28-3901 *et seq*. Specifically, Coca-Cola has violated D.C. Code § 28-3904, which makes it an unlawful trade practice to:

> (a)    represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .

> (d)    represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

> (e)    misrepresent as to a material fact which has a tendency to mislead; . . .

> (f)    fail to state a material fact if such failure tends to mislead;

> (f-1)    [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; . . . [or]

> (h)    advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

161.    The CPPA makes such conduct an unlawful trade practice "whether or not any consumer is in fact misled, deceived or damaged thereby." D.C. Code § 28-3904.

162.    Plaintiff Earth Island Institute need not show proof of deception to succeed on its CPPA claim; nevertheless, upon information and belief, consumers were, in fact, deceived.

163.    Earth Island Institute has a sufficient nexus to consumers of Coca-Cola's products and services to adequately represent those interests.

164.    Because Coca-Cola misrepresents the characteristics and benefits of the products it provides; misrepresents the standard, quality, and grade of the products; and advertises its products and services without the intent to provide them as advertised, Coca-Cola's marketing of its services violates D.C. Code §§ 28-3904(a), (d), (e), (f), (f-1), and (h).

165.    Coca-Cola is a "person" within the meaning of D.C. Code § 28-3901(a)(1), a merchant under § 28-3901(a)(3), and provides "goods and services" within the meaning of § 28-3901(a)(7).

166.    Any consumer has the right to bring an action for redress of Coca-Cola's unlawful behavior, *see* D.C. Code § 28-3905(k)(1)(A), and the statute does not limit consumer plaintiffs according to whether they purchased the product at issue. Nevertheless, as alleged in this Complaint, the plastic products are marketed and provided in the District, and consumers within the District have obtained these products under the misrepresentations made by Coca-Cola. Therefore, a variety of purchasing and non-purchasing consumers could bring an action against Coca-Cola based on the misrepresentations and omissions listed in this Complaint.

167.    Pursuant to D.C. Code § 28-3905(k)(1)(D)(i), "a public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice."

168.    The only limitation on this power of a public interest organization to act on behalf of consumers is that the public interest organization must have "sufficient nexus to the interests

involved of the consumer or class to adequately represent those interests." D.C. Code § 28-3905(k)(1)(D)(ii). As set forth in this Complaint, *see supra* ¶¶ 124-132, Earth Island Institute was founded with the purpose of advocating for and educating consumers, including consumers in the District of Columbia, in the arena of environmental responsibility. In addition, Earth Island Institute has retained the undersigned competent counsel, who have significant experience in litigating under the CPPA, to pursue this action.

169.    Via § 28-3905(k)(1)(D)(i), the CPPA allows for public interest organizational standing to the fullest extent recognized by the D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

170.    Earth Island Institute is a "person" within the meaning of D.C. Code § 28-3901(a)(1) and a "public interest organization" within the meaning of D.C. Code § 28-3901(a)(15).

## PRAYER FOR RELIEF

***Wherefore***, Plaintiff Earth Island Institute prays for judgment against Defendant Coca-Cola, and requests the following relief:

A.    a declaration that Coca-Cola's conduct is in violation of the CPPA;

B.    an order enjoining Coca-Cola's conduct found to be in violation of the CPPA; and

C.    an order granting Plaintiff costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: June 4, 2021

Kim E. Richman (Bar No. 1022978)
Richman Law and Policy
1 Bridge Street, Ste. 83
Irvington, NY 10533
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
krichman@richmanlawpolicy.com

*Attorney for Plaintiff*

COMPLAINT

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

EARTH ISLAND INSTITUTE

Case Number: __2021 CA 001846 B__

vs

Date: __6/4/2021__

THE COCA-COLA COMPANY

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*  Kim E. Richman | **Relationship to Lawsuit** |
| Firm Name:  Richman Law & Policy | ☒ Attorney for Plaintiff |
| Telephone No.:  (212) 687-8291  Six digit Unified Bar No.:  1022978 | ☐ Self (Pro Se)  ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury    ☐ 6 Person Jury    ☒ 12 Person Jury

Demand: $ N/A _____    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____    Judge: _____    Calendar #: _____

Case No.: _____    Judge: _____    Calendar#: _____

---

**NATURE OF SUIT:**    *(Check One Box Only)*

**A. CONTRACTS**    **COLLECTION CASES**

☐ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
     Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
     Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
     Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
     Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
     Under $25,000 Consent Denied

**B. PROPERTY TORTS**

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

**C. PERSONAL TORTS**

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☒ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
     Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
     Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
Attorney's Signature

6/4/2021
_____
Date



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

EARTH ISLAND INSTITUTE
   Vs.                                                    C.A. No.        2021 CA 001846 B
THE COCA-COLA COMPANY

## INITIAL ORDER AND ADDENDUM

**Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby** ORDERED **as follows:**

   (1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

   (2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

   (3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

   (4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

   (5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.

No other continuance of the conference will be granted except upon motion for good cause shown.

   (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge FERN FLANAGAN SADDLER
Date:        June 8, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, September 03, 2021
Location:   Courtroom 100
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,   "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.   The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.   Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

CAIO-60

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option1:  (AUDIO ONLY/Dial-in by Phone):**

Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.

> ⚜ *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the Audio Alternative

**Option 2: (LAPTOP/ DESKTOP USERS 1):**

> Open Web Browser in Google Chrome and copy and paste following address from the next page:
> https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3: (LAPTOP/ DESKTOP USERS 2):**

> Open Web Browser in Google Chrome and copy and paste following address
> https://dccourts.webex.com   Select **Join**, enter the Meeting ID from the next page



AUDIO ALTERNATIVE**:**  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.

**Option 4: (Ipad/SMART PHONE/TABLET):**

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60

Superior Court of the District of Columbia
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Filed
D.C. Superior Court
06/09/2021 15:22PM
Clerk of the Court

# EARTH ISLAND INSTITUTE
Plaintiff

vs.

# THE COCA-COLA COMPANY
Defendant

Case Number 2021 CA 001846 B

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kim E. Richman

Name of Plaintiff's Attorney

1 Bridge St, Ste 83

Address

Irvington, NY 10533

(718) 705-4579

Telephone

*Clerk of the Court*

By _____

Deputy Clerk

Date _____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

EARTH ISLAND INSTITUTE
_____
                                          Demandante

        contra

                                                  Número de Caso:  2021 CA 001846 B

THE COCA-COLA COMPANY
_____
                                          Demandado

**CITATORIO**

Al susodicho Demandado:

        Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

        A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Kim E. Richman                                        *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

 1 Bridge St, Ste 83                        Por: _____
Dirección                                              Subsecretario
 Irvington, NY 10533

 (718) 705-4579                             Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828 로 연락하십시오      የአማርኛ ትርጉም ለማግኘት: (202) 879-4828 ይደውሉ

        IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

        Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

**AFFIDAVIT OF SERVICE**

| Case: 2021 CA 001846 B | Court: SUPERIOR COURT OF THE DISTRICT OF COLUMBIA | County: | Job: 5794204 (2021-337-25-4664376) |
|---|---|---|---|
| Plaintiff / Petitioner: EARTH ISLAND INSTITUTE | | Defendant / Respondent: THE COCA-COLA COMPANY | |
| Received by: BT Process Services | | For: Veritext Legal Solution | |
| To be served upon: THE COCA-COLA COMPANY, c/o REGISTERED AGENT CT CORPORATION SYSTEM | | | |

I, Berhane Tassaw, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein.

Recipient Name / Address:   THE COCA-COLA COMPANY, c/o REGISTERED AGENT CT CORPORATION SYSTEM, JANE RICHARDSON/PROCESS SPECIALIST, Company: 289 S Culver St, Lawrenceville, GA 30046

Manner of Service:   Registered Agent, Jun 18, 2021, 12:50 pm EDT

Documents:   Summons and Complaint. (Received Jun 16, 2021 at 11:00am EDT)

Additional Comments:
1) Successful Attempt: Jun 18, 2021, 12:50 pm EDT at Company: 289 S Culver St, Lawrenceville, GA 30046 received by THE COCA-COLA COMPANY, c/o REGISTERED AGENT CT CORPORATION SYSTEM, JANE RICHARDSON/PROCESS SPECIALIST. Age: 55; Ethnicity: Caucasian; Gender: Female; Weight: 170; Height: 5'8"; Hair: Blond;

_____       06/20/2021
Berhane Tassaw                          Date

BT Process Services
4514 Chamblee Dunwoody Rd 231
Atlanta, GA 30338
404-455-1603

Subscribed and sworn to before me by the affiant who is
personally known to me.

_____
Notary Public

06-20-2021
Date                          Commission Expires



KIFLOM AWETAHENG
Notary Public, Georgia
Dekalb County
My Commission Expires
May 09, 2025

**Filed**
**D.C. Superior Court**
**07/02/2021 17:42PM**
**Clerk of the Court**

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| **EARTH ISLAND INSTITUTE,** | **Civil Action No. 2021 CA 001846 B** |
| **Plaintiff,** | |
| | **Judge Fern Flanagan Saddler** |
| **v.** | |
| **THE COCA-COLA COMPANY,** | <u>**Next Event:**</u> **September 3, 2021 at 9:30 a.m.** |
| **Defendant.** | **Initial Scheduling Conference** |

<u>**PRAECIPE OF APPEARANCE**</u>

**TO THE CLERK OF THIS COURT:**

Notice is hereby given that Anthony T. Pierce and Miranda A. Dore of the law firm Akin

Gump Strauss Hauer & Feld LLP, and Kevin Opoku-Gyamfi of the law firm Patterson Belknap

Webb & Tyler LLP, enter their appearance as counsel for Defendant The Coca-Cola Company.

Dated: July 2, 2021

Respectfully submitted,

<u>/s/ Anthony T. Pierce</u>
Anthony T. Pierce (D.C. Bar No. 415263)
Miranda A. Dore (D.C. Bar No. 1617089)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
apierce@akingump.com
mdore@akingump.com

Kevin Opoku-Gyamfi (D.C. Bar No. 1047433)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2665
Fax: (212) 336-2111
kopokugyamfi@pbwt.com

*Counsel for Defendant The Coca-Cola Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of July, 2021 a copy of the foregoing document has been filed and served electronically on all counsel of record via CaseFileXpress.

*/s/ Miranda A. Dore*
Miranda A. Dore

*Counsel for Defendant The Coca-Cola Company*

Filed
D.C. Superior Court
07/02/2021 17:45PM
Clerk of the Court

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| **EARTH ISLAND INSTITUTE,** | **Civil Action No. 2021 CA 001846 B** |
| **Plaintiff,** | **Judge Fern Flanagan Saddler** |
| **v.** | |
| **THE COCA-COLA COMPANY,** | **Next Event: September 3, 2021 at 9:30 a.m.** |
| **Defendant.** | **Initial Scheduling Conference** |

**THE COCA-COLA COMPANY'S RULE 7.1(A) DISCLOSURE STATEMENT**

Pursuant to Rule 7.1 of the Superior Court Rules of Civil Procedure, Defendant The Coca-Cola Company, by and through the undersigned counsel, hereby provide the following information concerning The Coca-Cola Company's corporate affiliations: The Coca-Cola Company is a publicly held corporation organized under the laws of the State of Delaware with no parent corporation and no publicly held corporation owning 10% or more of its stock.

Dated: July 2, 2021

Respectfully submitted,

_/s/ Anthony T. Pierce_
Anthony T. Pierce (D.C. Bar No. 415263)
Miranda A. Dore (D.C. Bar No. 1617089)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4411
Fax: (202) 887-4288
E-mail: apierce@akingump.com
           mdore@akingump.com

_Counsel for Defendant The Coca-Cola Company_

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, 2021 a copy of the foregoing document has been filed and served electronically on all counsel of record via CaseFileXpress.

/s/ Miranda A. Dore
Miranda A. Dore

*Counsel for Defendant The Coca-Cola Company*

2

Filed
D.C. Superior Court
07/02/2021 17:47PM
Clerk of the Court

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| **EARTH ISLAND INSTITUTE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE COCA-COLA COMPANY,**<br><br>**Defendant.** | **Civil Action No. 2021 CA 001846 B**<br><br>**Judge Fern Flanagan Saddler**<br><br><u>**Next Event:**</u> **September 3, 2021 at 9:30 a.m.**<br>**Initial Scheduling Conference** |

**CONSENT MOTION FOR EXTENSION OF TIME FOR DEFENDANT**
<u>**THE COCA-COLA COMPANY TO RESPOND TO COMPLAINT**</u>

Pursuant to Rule 6(b) of the Rules of Civil Procedure for the D.C. Superior Court,

Defendant The Coca-Cola Company ("Coca-Cola"), by and through undersigned counsel, moves

this Court for an Order extending the time for Coca-Cola to submit its response to the Complaint

by 60 days so that the response is due September 7, 2021.  In accordance with Superior Court

Rule 12-1(a)(1), Plaintiff Earth Island Institute ("Plaintiff"), through counsel, consents to this

request provided that Coca-Cola consents to a 60-day extension to respond to any motion to

dismiss the Complaint that may be filed, such that Plaintiff's opposition would be due on

November 8, 2021.  Coca-Cola consents to Plaintiff's reciprocal request, and further moves for

an extension of time in which to reply to Plaintiff's opposition, so that its deadline to reply would

be extended up to and including December 8, 2021, or 30 days after Plaintiff's response is filed,

whichever comes first.  Plaintiff also consents to this request.

1

Coca-Cola respectfully refers this Court to the accompanying Memorandum of Points and Authorities attached hereto.

Dated: July 2, 2021                Respectfully submitted,

*/s/ Steven A. Zalesin*
Steven A. Zalesin*
Gabriela Bersuder*
Emily H. Harris*
Kevin Opoku-Gyamfi (D.C. Bar No. 1047433)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2111
sazalesin@pbwt.com
gbersuder@pbwt.com
eharris@pbwt.com
kopokugyamfi@pbwt.com


*/s/ Anthony T. Pierce*
Anthony T. Pierce (D.C. Bar No. 415263)
Miranda A. Dore (D.C. Bar No. 1617089)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street N.W.
Washington, D.C. 20006
Tel: (202) 887-4000
Fax: (202) 887-4288

*Counsel for Defendant The Coca-Cola Company*
*\*Pro Hac Vice Applications to be filed*

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

|  |  |
|---|---|
| **EARTH ISLAND INSTITUTE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE COCA-COLA COMPANY,**<br><br>**Defendant.** | **Civil Action No. 2021 CA 001846 B**<br><br>**Judge Fern Flanagan Saddler**<br><br>**Next Event:** **September 3, 2021 at 9:30 a.m.**<br>**Initial Scheduling Conference** |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CONSENT MOTION FOR EXTENSION OF TIME FOR DEFENDANT THE COCA-COLA COMPANY TO RESPOND TO COMPLAINT

Pursuant to Rules 6(b) and 12-I(a) of the Rules of Civil Procedure for the D.C. Superior Court, Defendant The Coca-Cola Company ("Coca-Cola"), by and through undersigned counsel, moves this Court for an Order extending the time for Coca-Cola to submit its response to the Complaint by 60 days so that the response is due September 7, 2021. Plaintiff Earth Island Institute ("Plaintiff"), through counsel, consents to this request provided that Coca-Cola consents to a 60-day extension of Plaintiff's deadline to respond to any motion to dismiss the Complaint that may be filed by Coca-Cola, such that its response would be due on November 8, 2021. Coca-Cola consents to Plaintiff's reciprocal request and further moves for an extension of time in which to reply to Plaintiff's opposition, so that its reply would be extended up to and including December 8, 2021, or 30 days after Plaintiff's response is filed, whichever comes first. Plaintiff also consents to this request.

On June 4, 2021, Plaintiff filed a Complaint alleging that Coca-Cola violated the District of Columbia Consumer Protection Procedures Act. Compl. (June 4, 2021). On June 18, 2021, Plaintiff served Coca-Cola with the Complaint and Summons. Aff. of Service (June 21, 2021).

1

Pursuant to Super. R. Civ. P. 12(a)(1)(A), Coca-Cola's response to the Complaint is currently due on July 9, 2021.

Coca-Cola requests these extensions to provide a reasonable amount of additional time for Coca-Cola to analyze the complex issues raised by the Complaint and prepare its response. Plaintiff similarly requests an extension of the response deadline should Coca-Cola file a motion to dismiss the Complaint.  Pursuant to D.C. Superior Court Civil Rule 12-I(a), counsel for Coca-Cola has conferred with counsel for Plaintiff, and each party consents to the other's requests.  A proposed order is attached.

WHEREFORE, for the foregoing reasons, Coca-Cola respectfully requests that the Court grant this motion and extend the deadline for its response to the Complaint to September 7, 2021; extend Plaintiff's deadline to respond to any motion to dismiss the Complaint to November 8, 2021, or 60 days after Coca-Cola's motion is filed, whichever comes first; and extend Coca-Cola's deadline to reply to December 8, 2021, or 30 days after Plaintiff's response is filed, whichever comes first.

Dated: July 2, 2021

Respectfully submitted,

/s/ Steven A. Zalesin
Steven A. Zalesin*
Gabriela Bersuder*
Emily H. Harris*
Kevin Opoku-Gyamfi (D.C. Bar No. 1047433)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel: (212) 336-2000
Fax: (212) 336-2111
sazalesin@pbwt.com
gbersuder@pbwt.com
eharris@pbwt.com
kopokugyamfi@pbwt.com

2

/s/ Anthony T. Pierce
Anthony T. Pierce (D.C. Bar No. 415263)
Miranda A. Dore (D.C. Bar No. 1617089)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street N.W.
Washington, D.C. 20006
Tel: (202) 887-4000
Fax: (202) 887-4288

*Counsel for Defendant The Coca-Cola Company*
*\*Pro Hac Vice Applications to be filed*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2021, a true copy of the foregoing Consent Motion For

Extension of Time For Defendant To Respond to Complaint, together with the Memorandum of

Points and Authorities In Support was filed through CasefileXpress, which electronically serves

all counsel of record.

/s/ Miranda A. Dore
Miranda A. Dore (D.C. Bar No. 1617089)

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | |
|---|---|
| **EARTH ISLAND INSTITUTE,** | **Civil Action No. 2021 CA 001846 B** |
| **Plaintiff,** | |
| | **Judge Fern Flanagan Saddler** |
| **v.** | |
| **THE COCA-COLA COMPANY,** | |
| **Defendant.** | |

**ORDER**

Upon consideration of the Consent Motion For Extension of Time for Defendant to Respond to Complaint and finding it to be supported by good cause, it is hereby

**ORDERED** that the Motion is **GRANTED**, and it is further

**ORDERED** that Defendant must respond to the Complaint on or before September 7, 2021, and it is further

**ORDERED** that Plaintiff must respond to any motion to dismiss the Complaint on or before November 8, 2021, or 60 days after Defendant's motion is filed, whichever comes first, and it is further

**ORDERED** that Defendant must reply to Plaintiff's response on or before December 8, 2021, or 30 days after Plaintiff's response is filed, whichever comes first.

**SO ORDERED.**

Dated:_____

_____
THE HONORABLE FERN FLANAGAN SADDLER

Copies to:  *All Counsel of Record*

Filed
D.C. Superior Court
07/09/2021 17:10PM
Clerk of the Court

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **EARTH ISLAND INSTITUTE,** | **Civil Action No. 2021 CA 001846 B** |
| **Plaintiff,** | |
| | **Judge Fern Flanagan Saddler** |
| **v.** | |
| | |
| **THE COCA-COLA COMPANY,** | <u>**Next Event:**</u> **September 3, 2021 at 9:30 a.m.** |
| **Defendant.** | **Initial Scheduling Conference** |

## <u>CONSENT MOTION FOR ADMISSION *PRO HAC VICE* OF EMILY H. HARRIS</u>

Pursuant to Rule 101(a)(3) of the Superior Court Rules of Civil Procedure, I, Anthony T. Pierce, a member of the bar of this Court, hereby move for an Order granting the admission *pro hac vice* of Emily H. Harris of Patterson Belknap Webb & Tyler LLP, 1133 Avenue of the Americas, New York NY 10036, in the above-captioned action as co-counsel for defendant The Coca-Cola Company.  Ms. Harris is admitted, practicing, and a member in good standing of the bar of the State of New York as verified by her accompanying Sworn Application for admission.

Dated: July 9, 2021

Respectfully submitted,

_____*/s/ Anthony T. Pierce*_____
Anthony T. Pierce (D.C. Bar No. 415263)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4411
Fax: (202) 887-4288
apierce@akingump.com

*Counsel for Defendant The Coca-Cola Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of July, 2021 a copy of the foregoing document has

been filed and served electronically on all counsel of record via CaseFileXpress.

*/s/ Anthony T. Pierce*
Anthony T. Pierce

*Counsel for Defendant The Coca-Cola Company*

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

|  |  |
|---|---|
| **EARTH ISLAND INSTITUTE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE COCA-COLA COMPANY,**<br><br>**Defendant.** | **Civil Action No. 2021 CA 001846 B**<br><br>**Judge Fern Flanagan Saddler**<br><br><u>**Next Event:**</u> **September 3, 2021 at 9:30 a.m.**<br>**Initial Scheduling Conference** |

<u>**APPLICATION FOR ADMISSION *PRO HAC VICE***</u>

I, Emily H. Harris, declare under penalty of perjury that:

1.   I have not applied for admission *pro hac vice* in more than five cases in courts of the District of Columbia this calendar year;

2.   I am a member in good standing of the highest court of the State of New York;

3.   There are no disciplinary complaints pending against me for violation of the rules of the courts of that state;

4.   I have not had an application for admission to the D.C. Bar denied;

5.   I will promptly notify the Court if, during the course of the proceedings, I am suspended or disbarred for disciplinary reasons or resign with charges pending in any jurisdiction or court;

6.   I am associated with:

> Anthony T. Pierce (D.C. Bar No. 415263)
> AKIN GUMP STRAUSS HAUER & FELD LLP
> 2001 K Street, N.W.
> Washington, D.C. 20006
> Tel: (202) 887-4411
> Fax: (202) 887-4288
> apierce@akingump.com

7.   I do not practice or hold out to practice law in the District of Columbia;

8.   I have read all of the rules of the relevant division of the Superior Court of the District of Columbia and the District of Columbia Court of Appeals, and have complied fully with District of Columbia Court of Appeals Rule 49 and Superior Court Rule 101;

9.   The reason I am applying for admission *pro hac vice* is to represent The Coca-Cola Company in the above-captioned matter;

10.  I acknowledge the power and jurisdiction of the courts of the District of Columbia over my professional conduct in or related to the proceedings; and

11.  I agree to be bound by the District of Columbia Court of Appeals Rules of Professional Conduct in the above-referenced matter, if I am admitted *pro hac vice*; and

12.  Attached hereto is the receipt that the Committee on the Unauthorized Practice of Law for the District of Columbia Court of Appeals issued as proof of my payment of the *pro hac vice* fee.

Dated:  July 9, 2021

_____ */s/ Emily H. Harris* _____
Emily H. Harris (*pro hac vice* forthcoming)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036
Tel: (212) 336-2384
Fax: (212) 336-2222
eharris@pbwt.com
mcolitigation@pbwt.com

2

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| **EARTH ISLAND INSTITUTE,** | **Civil Action No. 2021 CA 001846 B** |
| **Plaintiff,** | **Judge Fern Flanagan Saddler** |
| v. | |
| **THE COCA-COLA COMPANY,** | <u>**Next Event:**</u> **September 3, 2021 at 9:30 a.m.** |
| **Defendant.** | **Initial Scheduling Conference** |

<u>**PRAECIPE FOR APPEARANCE**</u>

**TO THE CLERK OF THIS COURT:**

Pursuant to Rule 101(a) of the Superior Court Rules of Civil Procedure, notice is hereby

given that Emily H. Harris of the law firm of Patterson Belknap Webb and & Tyler LLP enters

her appearance as counsel for Defendant The Coca-Cola Company.

Dated: July 9, 2021

Respectfully submitted,

_/s/ Emily H. Harris_

Emily H. Harris (*pro hac vice* forthcoming)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036
Tel: (212) 336-2384
Fax: (212) 336-2111
eharris@pbwt.com
mcolitigation@pbwt.com

_/s/ Anthony T. Pierce_

Anthony T. Pierce (DC Bar No. 415263)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4411
Fax: (202) 887-4288
apierce@akingump.com

*Counsel for Defendant The Coca-Cola Company*



District of Columbia Court of Appeals
Committee on Unauthorized Practice
of Law 430 E Street, N.W.-Room 123
Washington, D.C. 20001
202 / 879-2777

## RECEIPT

APPLICATION TO APPEAR *PRO HAC VICE*

Of ___Emily H. Harris_____

Name of Attorney

Case No. ___2021 CA 001846 B_____

___Earth Island Institute v. The Coca-Cola Company._____

The District of Columbia Court of Appeals Committee on Unauthorized Practice of Law, in accordance with the provisions of D.C. App. Rule 49(c) (7), has received a copy of the application to appear *pro hac vice*. As of this date, the Committee's records indicate that the attorney has not applied for admission *pro hac vice* in more than five (5) cases in the courts of the District of Columbia this calendar year. **Per the May 4, 2020 Order of the Court of Appeals, this application was approved without receipt of payment because of reduced on site court operations in response to the Covid 19 pandemic. Payment is due when on-site operations resume.**

___7/9/2021___         *Rebecca Hunter*_____

Date                          for the
                               Committee on Unauthorized Practice
                               of Law Room 123 - 202/879-2777

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **EARTH ISLAND INSTITUTE,** | Civil Action No. 2021 CA 001846 B |
| **Plaintiff,** | **Judge Fern Flanagan Saddler** |
| **v.** | |
| **THE COCA-COLA COMPANY,** | <u>Next Event:</u> **September 3, 2021 at 9:30 a.m.** |
| **Defendant.** | **Initial Scheduling Conference** |

**[PROPOSED] ORDER**

Upon review and consideration of the Consent Motion for Admission *Pro Hac Vice* of

Emily H. Harris as counsel for The Coca-Cola Company it is hereby:

**ORDERED** that the Motion is **GRANTED**; and it is

**FURTHER ORDERED** that Emily H. Harris shall be permitted to appear and to

participate in the proceedings in the above-referenced matters as counsel for The Coca-Cola

Company.

Entered this _____ day of July, 2021.

_____
The Honorable Judge Fern Flanagan Saddler
Associate Judge

Electronic copies to:  *All Counsel of Record*

Steven A. Zalesin
Kevin Opoku-Gyamfi (D.C. Bar No. 1047433)
Gabriela Bersuder
Emily H. Harris
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2110
Fax: (212) 336-2222
Email: sazalesin@pbwt.com

kopokugyamfi@pbwt.com
gbersuder@pbwt.com
eharris@pbwt.com

Anthony T. Pierce (D.C. Bar No. 415263)
Miranda A. Dore (D.C. Bar No. 1617089)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4411
Fax: (202) 887-4288
E-mail: apierce@akingump.com
         mdore@akingump.com

*Counsel for Defendant The Coca-Cola Company*

Kim E. Richman (D.C. Bar No. 1022978)
RICHMAN LAW AND POLICY
1 Bridge Street, Ste. 83
Irvington, NY 10533
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
Email: krichman@richmanlawgroup.com

*Counsel for Plaintiff*

Filed
D.C. Superior Court
07/09/2021 17:07PM
Clerk of the Court

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| **EARTH ISLAND INSTITUTE,** | **Civil Action No. 2021 CA 001846 B** |
| **Plaintiff,** | **Judge Fern Flanagan Saddler** |
| **v.** |  |
| **THE COCA-COLA COMPANY,** | <u>**Next Event:**</u> **September 3, 2021 at 9:30 a.m.** |
| **Defendant.** | **Initial Scheduling Conference** |

<u>**CONSENT MOTION FOR ADMISSION *PRO HAC VICE* OF GABRIELA BERSUDER**</u>

Pursuant to Rule 101(a)(3) of the Superior Court Rules of Civil Procedure, I, Anthony T. Pierce, a member of the bar of this Court, hereby move for an Order granting the admission *pro hac vice* of Gabriela Bersuder of Patterson Belknap Webb & Tyler LLP, 1133 Avenue of the Americas, New York NY 10036, in the above-captioned action as co-counsel for defendant The Coca-Cola Company.  Ms. Bersuder is admitted, practicing, and a member in good standing of the bar of the State of New York as verified by her accompanying Sworn Application for admission.

Dated: July 9, 2021                                            Respectfully submitted,


                                                                             */s/ Anthony T. Pierce*
                                                                             Anthony T. Pierce (D.C. Bar No. 415263)
                                                                             Akin Gump Strauss Hauer & Feld LLP
                                                                             Robert S. Strauss Tower
                                                                             2001 K Street, N.W.
                                                                             Washington, D.C. 20006
                                                                             Tel: (202) 887-4411
                                                                             Fax: (202) 887-4288
                                                                             apierce@akingump.com

                                                                             *Counsel for Defendant The Coca-Cola Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of July, 2021 a copy of the foregoing document has been filed and served electronically on all counsel of record via CaseFileXpress.

*/s/ Anthony T. Pierce*
Anthony T. Pierce

*Counsel for Defendant The Coca-Cola Company*

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| **EARTH ISLAND INSTITUTE,** | **Civil Action No. 2021 CA 001846 B** |
| **Plaintiff,** | |
| | **Judge Fern Flanagan Saddler** |
| **v.** | |
| **THE COCA-COLA COMPANY,** | <u>**Next Event:**</u> **September 3, 2021 at 9:30 a.m.** |
| **Defendant.** | **Initial Scheduling Conference** |

<u>**APPLICATION FOR ADMISSION *PRO HAC VICE***</u>

I, Gabriela Bersuder, declare under penalty of perjury that:

1. I have not applied for admission *pro hac vice* in more than five cases in courts of the District of Columbia this calendar year;

2. I am a member in good standing of the highest court of the State of New York;

3. There are no disciplinary complaints pending against me for violation of the rules of the courts of that state;

4. I have not had an application for admission to the D.C. Bar denied;

5. I will promptly notify the Court if, during the course of the proceedings, I am suspended or disbarred for disciplinary reasons or resign with charges pending in any jurisdiction or court;

6. I am associated with:

> Anthony T. Pierce (D.C. Bar No. 415263)
> AKIN GUMP STRAUSS HAUER & FELD LLP
> 2001 K Street, N.W.
> Washington, D.C. 20006
> Tel: (202) 887-4411
> Fax: (202) 887-4288
> apierce@akingump.com

7. I do not practice or hold out to practice law in the District of Columbia;

8.   I have read all of the rules of the relevant division of the Superior Court of the District of Columbia and the District of Columbia Court of Appeals, and have complied fully with District of Columbia Court of Appeals Rule 49 and Superior Court Rule 101;

9.   The reason I am applying for admission *pro hac vice* is to represent The Coca-Cola Company in the above-captioned matter;

10. I acknowledge the power and jurisdiction of the courts of the District of Columbia over my professional conduct in or related to the proceedings; and

11. I agree to be bound by the District of Columbia Court of Appeals Rules of Professional Conduct in the above-referenced matter, if I am admitted *pro hac vice*; and

12. Attached hereto is the receipt that the Committee on the Unauthorized Practice of Law for the District of Columbia Court of Appeals issued as proof of my payment of the *pro hac vice* fee.

Dated:  July 9, 2021

                  */s/ Gabriela Bersuder*

Gabriela Bersuder (*pro hac vice* forthcoming)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036
Tel: (212) 336-2151
Fax: (212) 336-2222
gbersuder@pbwt.com

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **EARTH ISLAND INSTITUTE,** <br><br> **Plaintiff,** <br><br> v. <br><br> **THE COCA-COLA COMPANY,** <br><br> **Defendant.** | **Civil Action No. 2021 CA 001846 B** <br><br> **Judge Fern Flanagan Saddler** <br><br><br> <u>**Next Event:**</u> **September 3, 2021 at 9:30 a.m.** <br> **Initial Scheduling Conference** |

## <u>PRAECIPE FOR APPEARANCE</u>

**TO THE CLERK OF THIS COURT:**

Pursuant to Rule 101(a) of the Superior Court Rules of Civil Procedure, notice is hereby given that Gabriela Bersuder of the law firm of Patterson Belknap Webb and & Tyler LLP enters her appearance as counsel for Defendant The Coca-Cola Company.

Dated: July 9, 2021

Respectfully submitted,

*/s/ Gabriela Bersuder*

Gabriela Bersuder (*pro hac vice* forthcoming)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2151
Fax: (212) 336-2111
gbersuder@pbwt.com

*/s/ Anthony T. Pierce*

Anthony T. Pierce (DC Bar No. 415263)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4411
Fax: (202) 887-4288
apierce@akingump.com

*Counsel for Defendant The Coca-Cola Company*



District of Columbia Court of Appeals
Committee on Unauthorized Practice
of Law 430 E Street, N.W.-Room 123
Washington, D.C. 20001
202 / 879-2777

# RECEIPT

APPLICATION TO APPEAR *PRO HAC VICE*

Of  Gabriela Bersuder
_____
Name of Attorney

Case No.  2021 CA 001846 B
_____

Earth Island Institute v. The Coca-Cola Company.
_____

The District of Columbia Court of Appeals Committee on Unauthorized Practice of Law, in accordance with the provisions of D.C. App. Rule 49(c) (7), has received a copy of the application to appear *pro hac vice*. As of this date, the Committee's records indicate that the attorney has not applied for admission *pro hac vice* in more than five (5) cases in the courts of the District of Columbia this calendar year. **Per the May 4, 2020 Order of the Court of Appeals, this application was approved without receipt of payment because of reduced on site court operations in response to the Covid 19 pandemic. Payment is due when on-site operations resume.**

7/9/2021
_____
Date

*Rebecca Hunter*
_____
for the
Committee on Unauthorized Practice
of Law Room 123 - 202/879-2777

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **EARTH ISLAND INSTITUTE,** | Civil Action No. 2021 CA 001846 B |
| **Plaintiff,** | |
| | **Judge Fern Flanagan Saddler** |
| v. | |
| | <u>Next Event:</u> **September 3, 2021 at 9:30 a.m.** |
| **THE COCA-COLA COMPANY,** | **Initial Scheduling Conference** |
| **Defendant.** | |

**[PROPOSED] ORDER**

Upon review and consideration of the Consent Motion for Admission *Pro Hac Vice* of

Gabriela Bersuder as counsel for The Coca-Cola Company it is hereby:

**ORDERED** that the Motion is **GRANTED**; and it is

**FURTHER ORDERED** that Gabriela Bersuder shall be permitted to appear and to

participate in the proceedings in the above-referenced matters as counsel for The Coca-Cola

Company.

Entered this _____ day of July, 2021.

_____
The Honorable Judge Fern Flanagan Saddler
Associate Judge

Electronic copies to: *All Counsel of Record*

Steven A. Zalesin
Kevin Opoku-Gyamfi (D.C. Bar No. 1047433)
Gabriela Bersuder
Emily H. Harris
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2110
Fax: (212) 336-2222
Email: sazalesin@pbwt.com

kopokugyamfi@pbwt.com
gbersuder@pbwt.com
eharris@pbwt.com

Anthony T. Pierce (D.C. Bar No. 415263)
Miranda A. Dore (D.C. Bar No. 1617089)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4411
Fax: (202) 887-4288
E-mail: apierce@akingump.com
         mdore@akingump.com

*Counsel for Defendant The Coca-Cola Company*


Kim E. Richman (D.C. Bar No. 1022978)
RICHMAN LAW AND POLICY
1 Bridge Street, Ste. 83
Irvington, NY 10533
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
Email: krichman@richmanlawgroup.com

*Counsel for Plaintiff*

Filed
D.C. Superior Court
07/09/2021 17:02PM
Clerk of the Court

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

|  |  |
|---|---|
| **EARTH ISLAND INSTITUTE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**THE COCA-COLA COMPANY,**<br><br>**Defendant.** | **Civil Action No. 2021 CA 001846 B**<br><br>**Judge Fern Flanagan Saddler**<br><br>**Next Event:** **September 3, 2021 at 9:30 a.m.**<br>**Initial Scheduling Conference** |

## <u>CONSENT MOTION FOR ADMISSION *PRO HAC VICE* OF STEVEN A. ZALESIN</u>

Pursuant to Rule 101(a)(3) of the Superior Court Rules of Civil Procedure, I, Anthony T.

Pierce, a member of the bar of this Court, hereby move for an Order granting the admission *pro*

*hac vice* of Steven A. Zalesin of Patterson Belknap Webb & Tyler LLP, 1133 Avenue of the

Americas, New York NY 10036, in the above-captioned action as co-counsel for defendant The

Coca-Cola Company.  Mr. Zalesin is admitted, practicing, and a member in good standing of the

bar of the State of New York as verified by his accompanying Sworn Application for admission.

Dated: July 9, 2021

Respectfully submitted,

_____*/s/ Anthony T. Pierce*_____
Anthony T. Pierce (D.C. Bar No. 415263)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4411
Fax: (202) 887-4288
E-mail: apierce@akingump.com

*Counsel for Defendant The Coca-Cola Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of July, 2021 a copy of the foregoing document has been filed and served electronically on all counsel of record via CaseFileXpress.

*/s/ Anthony T. Pierce*
Anthony T. Pierce

*Counsel for Defendant The Coca-Cola Company*

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| **EARTH ISLAND INSTITUTE,** | **Civil Action No. 2021 CA 001846 B** |
| **Plaintiff,** | **Judge Fern Flanagan Saddler** |
| **v.** |  |
| **THE COCA-COLA COMPANY,** | **Next Event:** **September 3, 2021 at 9:30 a.m.** |
| **Defendant.** | **Initial Scheduling Conference** |

**APPLICATION FOR ADMISSION *PRO HAC VICE***

I, Steven A. Zalesin, declare under penalty of perjury that:

    1.  I have not applied for admission *pro hac vice* in more than five cases in courts of the District of Columbia this calendar year;

    2.  I am a member in good standing of the highest court of the States of New York and Florida;

    3.  There are no disciplinary complaints pending against me for violation of the rules of the courts of these states;

    4.  I have not had an application for admission to the D.C. Bar denied;

    5.  I will promptly notify the Court if, during the course of the proceedings, I am suspended or disbarred for disciplinary reasons or resign with charges pending in any jurisdiction or court;

    6.  I am associated with:

> Anthony T. Pierce (D.C. Bar No. 415263)
> AKIN GUMP STRAUSS HAUER & FELD LLP
> 2001 K Street, N.W.
> Washington, D.C. 20006
> Tel: (202) 887-4411
> Fax: (202) 887-4288
> apierce@akingump.com

7. I do not practice or hold out to practice law in the District of Columbia;

8. I have read all of the rules of the relevant division of the Superior Court of the District of Columbia and the District of Columbia Court of Appeals, and have complied fully with District of Columbia Court of Appeals Rule 49 and Superior Court Rule 101;

9. The reason I am applying for admission *pro hac vice* is to represent The Coca-Cola Company in the above-captioned matter;

10. I acknowledge the power and jurisdiction of the courts of the District of Columbia over my professional conduct in or related to the proceedings; and

11. I agree to be bound by the District of Columbia Court of Appeals Rules of Professional Conduct in the above-referenced matter, if I am admitted *pro hac vice*; and

12. Attached hereto is the receipt that the Committee on the Unauthorized Practice of Law for the District of Columbia Court of Appeals issued as proof of my payment of the *pro hac vice* fee.

Dated: July 9, 2021

         */s/ Steven A. Zalesin*
         Steven A. Zalesin (*pro hac vice* forthcoming)
         PATTERSON BELKNAP WEBB & TYLER LLP
         1133 Avenue of the Americas
         New York, NY 10036
         Tel: (212) 336-2110
         Fax: (212) 336-2222
         sazalesin@pbwt.com

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **EARTH ISLAND INSTITUTE,** | **Civil Action No. 2021 CA 001846 B** |
| **Plaintiff,** | |
| | **Judge Fern Flanagan Saddler** |
| **v.** | |
| **THE COCA-COLA COMPANY,** | <u>**Next Event:**</u> **September 3, 2021 at 9:30 a.m.** |
| **Defendant.** | **Initial Scheduling Conference** |

## <u>PRAECIPE FOR APPEARANCE</u>

**TO THE CLERK OF THIS COURT:**

Pursuant to Rule 101(a) of the Superior Court Rules of Civil Procedure, notice is hereby

given that Steven A. Zalesin of the law firm of Patterson Belknap Webb and & Tyler LLP enters

his appearance as counsel for Defendant The Coca-Cola Company.

Dated: July 9, 2021                              Respectfully submitted,

                                        _____*/s/ Steven A. Zalesin*_____
                                        Steven A. Zalesin (*pro hac vice* forthcoming)
                                        PATTERSON BELKNAP WEBB & TYLER LLP
                                        1133 Avenue of the Americas
                                        New York, NY 10036
                                        Tel: (212) 336-2110
                                        Fax: (212) 336-2111
                                        sazalesin@pbwt.com

                                        _____*/s/ Anthony T. Pierce*_____
                                        Anthony T. Pierce (DC Bar No. 415263)
                                        AKIN GUMP STRAUSS HAUER & FELD LLP
                                        2001 K Street, N.W.
                                        Washington, D.C. 20006
                                        Tel: (202) 887-4411
                                        Fax: (202) 887-4288
                                        apierce@akingump.com

                                        *Counsel for Defendant The Coca-Cola Company*



District of Columbia Court of Appeals
Committee on Unauthorized Practice
of Law 430 E Street, N.W.-Room 123
Washington, D.C. 20001
202 / 879-2777

## RECEIPT

APPLICATION TO APPEAR *PRO HAC VICE*

Of ____Steven A. Zalesin_____

       Name of Attorney

Case No. ___2021 CA 001846 B_____

       Earth Island Institute v. The Coca-Cola Company.

The District of Columbia Court of Appeals Committee on Unauthorized Practice of Law, in accordance with the provisions of D.C. App. Rule 49(c) (7), has received a copy of the application to appear *pro hac vice*. As of this date, the Committee's records indicate that the attorney has not applied for admission *pro hac vice* in more than five (5) cases in the courts of the District of Columbia this calendar year. **Per the May 4, 2020 Order of the Court of Appeals, this application was approved without receipt of payment because of reduced on site court operations in response to the Covid 19 pandemic. Payment is due when on-site operations resume.**

____7/9/2021____     *Rebecca Hunter*_____

Date          for the
            Committee on Unauthorized Practice
            of Law Room 123 - 202/879-2777

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

|  |  |
|---|---|
| **EARTH ISLAND INSTITUTE,** | Civil Action No. 2021 CA 001846 B |
| **Plaintiff,** | **Judge Fern Flanagan Saddler** |
| **v.** | |
| **THE COCA-COLA COMPANY,** | <u>Next Event:</u> **September 3, 2021 at 9:30 a.m.** **Initial Scheduling Conference** |
| **Defendant.** | |

**[PROPOSED] ORDER**

Upon review and consideration of the Consent Motion for Admission *Pro Hac Vice* of

Steven A. Zalesin as counsel for The Coca-Cola Company it is hereby:

**ORDERED** that the Motion is **GRANTED**; and it is

**FURTHER ORDERED** that Steven A. Zalesin shall be permitted to appear and to

participate in the proceedings in the above-referenced matters as counsel for The Coca-Cola

Company.

Entered this _____ day of July, 2021.

_____
The Honorable Judge Fern Flanagan Saddler
Associate Judge

Electronic copies to: *All Counsel of Record*

Steven A. Zalesin
Kevin Opoku-Gyamfi (D.C. Bar No. 1047433)
Gabriela Bersuder
Emily H. Harris
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2110
Fax: (212) 336-2222

Email: sazalesin@pbwt.com
       kopokugyamfi@pbwt.com
       gbersuder@pbwt.com
       eharris@pbwt.com

Anthony T. Pierce (D.C. Bar No. 415263)
Miranda A. Dore (D.C. Bar No. 1617089)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4411
Fax: (202) 887-4288
E-mail: apierce@akingump.com
        mdore@akingump.com

*Counsel for Defendant The Coca-Cola Company*


Kim E. Richman (D.C. Bar No. 1022978)
RICHMAN LAW AND POLICY
1 Bridge Street, Ste. 83
Irvington, NY 10533
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
Email: krichman@richmanlawgroup.com

*Counsel for Plaintiff*