# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **Earth Island Institute,** | Civil Action No. _____ |
| **Plaintiff,** |  |
| vs. |  |
| **The Coca-Cola Company,** |  |
| **Defendant.** |  |

# DECLARATION OF ALPA SUTARIA
# IN SUPPORT OF THE COCA-COLA COMPANY'S NOTICE OF REMOVAL

I, Alpa Sutaria, declare under penalty of perjury as follows.

1. I am the Sustainability General Manager for the North America Operating Unit at The Coca-Cola Company ("Coca-Cola"). My responsibilities include leading a cross-functional network of professionals to make progress toward Coca-Cola's sustainability goals. I have worked at Coca-Cola since 2010 and have worked in the Coca-Cola System as either an employee or a consultant since 2002. I am of legal age and submit this declaration based upon my personal knowledge in support of Defendant Coca-Cola's Notice of Removal.

2. I understand that Plaintiff in this matter alleges, among other things, that Coca-Cola misleadingly advertises that it is committed to environmental sustainability via various media, including its website, public statements to investors, social media, and the like. I also understand that Plaintiff claims that Coca-Cola generates high plastic waste and "exaggerates the role of recycling in addressing global plastic pollution." I understand that Plaintiff seeks an injunction that would halt statements that are found to violate D.C. law.

3. Plaintiff's requested injunction would require Coca-Cola to, among other things, remove references to recycling from all of Coca-Cola's public statements, marketing materials,

websites, social media, and product packaging; issue new marketing information; and discontinue its various sustainability initiatives

4. I was asked by counsel for Coca-Cola to provide an estimate and breakdown of the anticipated costs to Coca-Cola of complying with such an injunction. Based on my past experience and estimates reasonably available to me from consultants and outside vendors, I calculate that compliance with Plaintiff's requested injunction would require expenditures well in excess of $75,000. These expenditures would take three different forms: (1) removal of statements Plaintiff identifies as objectionable; (2) removal of references to recycling from product labels and advertising; and (3) other forms of affirmative, corrective advertising.

5. First, to identify and remove all statements about Coca-Cola's commitment to environmental sustainability and recycling from its website, sustainability reports, and social media, Coca-Cola would have to spend tens, if not hundreds, of thousands of dollars. This cost does not include the cost to modify the statements on third-party websites, which Coca-Cola does not control.

6. Second, to remove references to recycling from its product labels, Coca-Cola would be forced to overhaul nearly its entire product portfolio and to repackage the products in labels that do not reference a package's recyclability. Presently, 90% of Coca-Cola's worldwide portfolio is recyclable and substantially all packaging for such products includes a recyclable symbol or message of some kind ("Recycle Me," "Please recycle," etc.).

7. Such modifications across Coca-Cola's extensive product portfolio would require an investment of millions of dollars. These expenses would primarily arise from the redesign of graphics on product labels and replacement of product imagery on Coca-Cola's websites.

8. Finally, to issue other forms of corrective advertising, Coca-Cola would have to

make additional expenditures in excess of $100,000 relating to the cost of marketing consultants, graphics experts, and other technical vendors.

9. I therefore estimate that the combined cost of complying with Plaintiff's requested injunction would vastly exceed the sum of $75,000.

I declare under penalty of perjury under the laws of the State of Georgia and the United States that the foregoing facts are true and correct.  Executed on ___July 15, 2021___.

*Alpa Sutaria*
ALPA SUTARIA