# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Earth Island Institute,<br><br>          Plaintiff,<br><br>   v.<br><br>The Coca-Cola Company,<br><br>          Defendant. | Civil Action No. 21-cv-01926-PLF<br><br>Hon. Paul L. Friedman |

## DEFENDANT THE COCA-COLA COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF EARTH ISLAND'S MOTION TO REMAND

Anthony T. Pierce (D.C. Bar No. 415263)
Miranda A. Dore (D.C. Bar No. 1617089)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 887-4000
apierce@akingump.com
mdore@akingump.com

Steven A. Zalesin (Admitted *Pro Hac Vice*)
Jane Metcalf (Pro Hac Vice application
forthcoming)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2110
sazalesin@pbwt.com
jmetcalf@pbwt.com

*Attorneys for The Coca-Cola Company*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ...................................................................................................................... 3

     A.    Earth Island's Complaint and Requested Injunction ................................... 3

     B.    Coca-Cola's Expected Compliance Costs ................................................. 4

STANDARD ............................................................................................................................. 5

ARGUMENT ........................................................................................................................... 5

I.     THIS COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION ................... 5

     A.    The Costs of Compliance with Earth Island's Requested Injunction Alone
         Meet the Jurisdictional Threshold ................................................................. 6

     B.    The Non-Aggregation Principle Does Not Apply .................................... 8

         1.    There Are No Claims or Plaintiffs to Aggregate ........................ 8

         2.    Earth Island's Requested Injunction Constitutes a "Common and
             Undivided Interest" ................................................................. 11

     C.    Earth Island's Request for Attorneys' Fees Further Supports Diversity
         Jurisdiction ................................................................................................. 14

         1.    A Reasonable Estimate of Attorneys' Fees Exceeds $75,000 ............. 14

         2.    Attorneys' Fees Are Not Subject to the Non-Aggregation Rule .............. 16

II.    EARTH ISLAND IS NOT ENTITLED TO ATTORNEYS' FEES OR COSTS IN
      CONNECTION WITH ITS REMAND MOTION ........................................................... 16

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abante Rooter & Plumbing Inc.* v. *N.Y. Life Ins. Co.*,
  Civ. No. 16-3588 (S.D.N.Y. Oct. 2, 2017), ECF No. 51 ........................................................15

*Adoure v. Gillette Co.*,
  No. 05-11177-DPW, 2007 U.S. Dist. LEXIS 2641 (D. Mass. Jan. 11, 2007).........................12

*Beck* v. *Test Masters Educ. Servs., Inc.*,
  73 F. Supp. 3d 12 (D.D.C. 2014)............................................................................................15

*Beyond Pesticides v. Dr. Pepper Snapple Grp., Inc.*,
  322 F. Supp. 3d 119 (D.D.C. 2018) ........................................................................................12

*Beyond Pesticides v. Exxon Mobil Corp.*,
  Civ. Act. No. 20-1815 (TJK), 2021 U.S. Dist. LEXIS 53032 (D.D.C. 2021) ..................14, 17

*Breakman v. AOL LLC*,
  545 F. Supp. 2d 96 (D.D.C. 2008) ...................................................................................13, 14

*Breathe DC v. Santa Fe Nat. Tobacco Co.*,
  232 F. Supp. 3d 171 (D.D.C. 2017) ........................................................................................17

*Burton v. Coburn*,
  No. CIV.A. 04-965(RBW), 2005 WL 607912 (D.D.C. Mar. 16, 2005)................................18

*Busby v. Capital One, N.A.*,
  841 F. Supp. 2d 49 (D.D.C. 2012) ............................................................................................8

*Charvat* v. *Plymouth Rock Energy, LLC*,
  Civ. No. 15-4106 (E.D.N.Y. Oct. 5, 2017), ECF No. 57-2 .....................................................15

*Committee for GI Rights v. Callaway*,
  518 F.2d 466 (D.C. Cir. 1975)...............................................................................10, 13, 14

*Dart Cherokee Basin Operating Co. v. Owens*,
  574 U.S. 81 (2014).........................................................................................................5, 7, 15

*Dist. Cablevision L.P.* v. *Bassin*,
  828 A.2d 714 (D.C. 2003) ......................................................................................................15

*Earnest v. General Motors Corp.*,
  923 F. Supp. 1469 (N.D. Ala. 1996)........................................................................................11

*Food & Water Watch, Inc. v. Tyson Foods, Inc.*,
    No. 19-cv-2811 (APM), 2020 U.S. Dist. LEXIS 38232 (D.D.C. Mar. 5, 2020) .....................17

*GEO Specialty Chems., Inc. v. Husisian*,
    951 F. Supp. 2d 32 (D.D.C. 2013) ...........................................................................................6, 8

*Hoffman v. Vulcan Materials Co.*,
    19 F. Supp. 2d 475 (M.D.N.C. 1998) .........................................................................................11

*Hunt v. Wash. State Apple Advert. Commc'n*,
    432 U.S. 333 (1977) ......................................................................................................................6

*In re InPhonic, Inc.*,
    674 F. Supp. 2d 273 (D.D.C. 2009) ............................................................................................15

*Inst. for Truth in Mktg v. Total Health Network Corp.*,
    321 F. Supp. 3d 76 (D.D.C. 2018) ................................................................................................7

*Jackson* v. *Byrd*,
    Civ. No. 01-825, 2004 WL 3249692 (D.C. Super. Ct. Sept. 2, 2004) .....................................15

*Johnson-Brown v. 2200 M St. LLC*,
    257 F. Supp. 2d 175 (D.D.C. 2003) ............................................................................................18

*Katz v. Warner-Lambert Co.*,
    9 F. Supp. 2d 363 (S.D.N.Y. 1998) ............................................................................................11

*Knop v. Mackall*,
    645 F.3d 381 (D.C. Cir. 2011) ....................................................................................................17

*Lincoln Prop. Co. v. Roche*,
    546 U.S. 81 (2005) ........................................................................................................................5

*Loizon v. SMH Societe Suisse de Microelectronics*,
    950 F. Supp. 250 (N.D. Ill. 1996) ..............................................................................................12

*Lovell v. State Farm Mut. Auto Ins. Co.*,
    466 F.3d 893 (10th Cir. 2006) ..............................................................................................11, 12

*Martin v. Franklin Cap. Corp.*,
    546 U.S. 132 (2005) ....................................................................................................................17

*In re Microsoft Corp. Antitrust Litig.*,
    127 F. Supp. 2d 702 (D. Md. 2001) ............................................................................................11

*Mostofi v. Network Capital Funding Corp.*,
    798 F. Supp. 2d 52 (D.D.C. 2011) ..............................................................................................13

*Nat'l Welfare Rights Org. v. Weinberger*,
  377 F. Supp. 861 (D.D.C. 1974) ................................................................................11

*Organic Consumers Ass'n v. Hain Celestial Grp., Inc.*,
  285 F. Supp. 3d 100 (D.D.C. 2018) .............................................................................9

*Organic Consumers Ass'n v. Handsome Brook Farm Grp.*,
  222 F. Supp. 3d 74 (D.D.C. 2016) ...............................................................................7

*Organic Consumers Ass'n v. R.C. Bigelow, Inc.*,
  314 F. Supp. 3d 344 (D.D.C. 2018) ....................................................................14, 18

*Parker-Williams v. Charles Tini & Assocs., Inc.*,
  53 F. Supp. 3d 149 (D.D.C. 2014) .............................................................................15

*Smith v. Washington*,
  593 F.2d 1097 (D.C. Cir. 1978) ...................................................................................6

*Snyder v. Harris*,
  394 U.S. 332 (1969) ...........................................................................................2, 8, 11

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
  303 U.S. 283 (1938) ....................................................................................................16

*Stein v. American Express Travel Related Services*,
  813 F. Supp. 2d 69 (D.D.C. 2011) .............................................................................18

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ......................................................................................11

*Tatum v. Laird*,
  444 F.2d 947 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972) ..........9, 10, 13, 14

*Tires Prods. Liab. Litig. v. Bridgestone/Firestone, Inc. (In re Bridgestone/Firestone, Inc.)*,
  256 F. Supp. 2d 884 (S.D. Ind. 2003) .......................................................................12

*Wexler v. United Air Lines*,
  496 F. Supp. 2d 150 (D.D.C. 2007) .............................................................................7

*Williams v. First Gov't Mortg. & Investors. Corp.*,
  225 F.3d 738 (D.C. Cir. 2000) ...................................................................................15

*Williams v. Purdue Pharm. Co.*,
  No. 02-0556 (RMC), 2003 U.S. Dist. LEXIS 19268 (D.D.C. Feb. 27, 2003) .......13

*Witte v. Gen. Nutrition Corp.*,
  104 F. Supp. 3d 1 (D.D.C. 2015) ...........................................................................9, 14

iv

*Zuckman v. Monster Beverage Corp.*,
   958 F. Supp. 2d 293 (D.D.C. 2013) ..................................................................................16

**Statutes**

28 U.S.C. 1447(c) ............................................................................................................17

28 U.S.C. § 1331(a) ....................................................................................................9, 10

28 U.S.C. § 1332(a) ..............................................................................................1, 5, 6, 9

28 U.S.C. § 1441(a) ...........................................................................................................5

Class Action Fairness Act .........................................................................................13, 18

CPPA ...................................................................................................................... *passim*

D.C. Code § 28-3905(k)(2)(B) .........................................................................................15

District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3904
   *et seq.* ..........................................................................................................................1

Defendant The Coca-Cola Company ("Coca-Cola") respectfully submits this memorandum of law in opposition to Plaintiff Earth Island Institute's ("Earth Island") motion to remand.

## PRELIMINARY STATEMENT

In this action, Earth Island—a California-based environmental organization—challenges various public statements by Coca-Cola that allegedly mislead consumers about whether the company is truly "committed to reducing plastic pollution."  Compl. ¶ 28.  Earth Island claims that Coca-Cola's professed desire to "create a more sustainable" future, and "take responsibility" for the plastic packaging of its products, constitutes deceptive advertising because the bottle collection and recycling activities that Coca-Cola promotes cannot fully eradicate global plastic pollution. *Id.* ¶¶ 71-75.  Though it acknowledges that "various factors"—including consumer choices, the economics of plastic production, the shortcomings of the recycling industry, and local and foreign government policies—contribute to plastic pollution, Earth Island seeks to hold Coca-Cola uniquely responsible, insisting that Coca-Cola will never be a "truly sustainable company unless it moves away from its reliance on single-use plastic entirely."  *Id.* ¶ 15.  In pursuit of its environmental policy objectives, Earth Island asserts a single claim against Coca-Cola for violation of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904 *et seq.*, and seeks an injunction "to end" Coca-Cola's "unlawful conduct."  *Id.* ¶ 27.

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000 based on (a) the cost to Coca-Cola of implementing Earth Island's requested injunction and (b) the attorneys' fees it seeks.  Earth Island's far-reaching prayer for injunctive relief would require Coca-Cola to scrub virtually all references to recycling—even such benign phrases as "recyclable" and "please recycle"—from its product labels, websites and social media platforms.  Even assuming the injunction would not require an overhaul of Coca-Cola's business and transition to non-plastic

packaging, it would mandate, among other things, removal of so-called "unqualified" recyclability statements on labels used across Coca-Cola's entire product portfolio.

Despite its insistence that this is a "private attorney general action" in which it does not seek to represent any other plaintiff or plaintiff class, Earth Island contends that, in order to meet the amount-in-controversy threshold, Coca-Cola must show that the cost of complying with any injunction would exceed $75,000 per "member of the general public."  In other words, the compliance cost must be divided by the entire population of the District of Columbia—nearly 700,000 residents—before the amount-in-controversy calculation is performed.  By simple arithmetic, this means that no case of this sort can be removed to federal court unless the cost to the defendant of complying with the requested injunction would exceed **$50 billion**.

This is not, and should not be, the law.  The so-called "non-aggregation principle" on which Earth Island relies prevents the aggregation of claims brought by ***multiple*** plaintiffs, or where one plaintiff seeks to represent a plaintiff class.  *Snyder v. Harris*, 394 U.S. 332, 335 (1969) (courts may not aggregate "the separate and distinct claims of ***two or more plaintiffs***" to calculate the amount in controversy).  That is not this case.  This action is indisputably brought by a single plaintiff, Earth Island, which does not purport to represent any other plaintiff or any class.  Compl. ¶ 26 ("This is not a class action, or an action brought on behalf of any specific consumer. . . . No class certification will be requested.").  Application of the non-aggregation principle to this case would stretch that rule beyond logic and reason.

The nature of the relief Earth Island seeks underscores that this case falls outside the ambit of the non-aggregation principle, which does not apply when the relief sought is "a common and undivided interest" that cannot be parceled out among various plaintiffs or "members of the public."  As courts have held, injunctive relief against allegedly false advertising is a quintessential

"common and undivided" interest.  The costs to Coca-Cola to comply with the requested injunction would be the same whether this action sought to vindicate the rights of an individual plaintiff or of all residents of the District.  Regardless of how the case is styled, Coca-Cola will incur the same significant costs if Earth Island prevails.  Because it seeks relief that, if granted, would cause Coca-Cola to incur more than $75,000 in compliance costs, this action is removable to federal court, and Earth Island's motion to remand should be denied.

Even if this case is ultimately remanded, Earth Island's request for fees and costs should be denied because, as several courts have held, no controlling precedent precludes removal, and the D.C. Circuit has never addressed whether federal courts have diversity jurisdiction over "representative" actions such as this.  In the absence of controlling precedent, courts have declined to award fees and costs.  The same result should follow if remand is ordered here.

## **BACKGROUND**

### A.    **Earth Island's Complaint and Requested Injunction**

This action seeks to establish that Coca-Cola has misrepresented its commitments to recycling and to building a more sustainable and environmentally-friendly business model.  Earth Island disputes, for instance, Coca-Cola's statements that it "act[s] in ways to create a more sustainable and better shared future" (*id.* ¶ 32); that "scaling sustainability solutions" is a "focus" of the company (*id.* ¶ 33); that it is committed to a "World Without Waste" and to "taking responsibility" for plastic waste by encouraging bottle collection and recycling (*id.* ¶ 37-40); and that it aspires to "collect[] and recycl[e] the equivalent of 100% of the packaging" it produces by 2030 (*id.* ¶ 43-44).  By making such statements, Earth Island alleges, Coca-Cola has cultivated an "environmentally friendly image" (*id*. ¶30) that is inconsistent with the truth.

Though it notes that Coca-Cola "markets and sells its products" in the District of Columbia, Earth Island does not point to any activity or statement Coca-Cola has specifically targeted to the

District or its residents.  *Id.* ¶ 148.  Earth Island nonetheless alleges "upon information and belief" that Coca-Cola has caused unspecified "harm" to the "general public of the District of Columbia." It brings this action as a self-appointed "private attorney general" to redress that purported injury, and asks the Court to enjoin any "conduct found to be in violation of the CPPA."  *Id.* ¶¶ 149, 150, Prayer for Relief.

Notably, Earth Island disclaims any intention to seek class certification, or to join with other plaintiffs to achieve its objectives.  "This is not a class action, or an action brought on behalf of any specific consumer, but an action brought by Earth Island Institute on behalf of the general public, *i.e.*, D.C. consumers generally.  No class certification will be requested."  *Id.* ¶ 26.  The complaint asserts a single CPPA claim and requests, in addition to a sweeping injunction, an award of "costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law."  *Id.* Prayer for Relief.

### B.     Coca-Cola's Expected Compliance Costs

To comply with Earth Island's requested injunction, Coca-Cola would be forced to, among other things, remove or substantially modify all references to recycling from packages and labels across its vast portfolio of products, *id.* ¶¶ 74, 120, 122; remove the challenged statements from all media sources, including Coca-Cola's websites and social media platforms, *id.* ¶¶ 30-50; and (potentially) issue corrective advertising.  Completing these tasks would require "an investment of millions of dollars."  Decl. of Alpa Sutaria, Dkt. No. 2-4, ¶¶ 4-8.

## STANDARD

A defendant may remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Federal district courts have "original," diversity jurisdiction over suits between "citizens of different States" where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." *Id*. § 1332(a); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). Where a defendant premises removal on diversity jurisdiction, its notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Only "[i]f the plaintiff contests the defendant's allegation" must "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 88.

## ARGUMENT

### I.   THIS COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION

Federal diversity jurisdiction requires (1) complete diversity, *i.e.*, that the parties are citizens of different states; and (2) that the amount in controversy "exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). Earth Island does not dispute the first requirement: it is a California organization, and Coca-Cola is a Delaware corporation with its principal place of business in Georgia. *See* Notice of Removal ¶ 13 (Dkt. 1). The only question is whether this case satisfies the amount-in-controversy requirement. The answer is "yes" because the cost to Coca-Cola of complying with Earth Island's requested injunction surpasses that threshold many times over. The attorneys' fees Earth Island seeks increases the amount in controversy still more.

## A.   The Costs of Compliance with Earth Island's Requested Injunction Alone Meet the Jurisdictional Threshold

Diversity jurisdiction requires that the amount in controversy "exceeds the sum *or value* of $75,000."  28 U.S.C. § 1332(a) (emphasis added).  Where, as here, a plaintiff seeks injunctive relief, the amount in controversy is "measured by the value of the object of the litigation."  *Hunt v. Wash. State Apple Advert. Commc'n*, 432 U.S. 333, 347 (1977).  Earth Island does not dispute that the amount in controversy can be calculated from the defendant's perspective, and courts in this Circuit have held that the "cost to the defendant[] to remedy the alleged" wrongdoing is an appropriate measure of the amount in controversy.  *Smith v. Washington*, 593 F.2d 1097, 1099 (D.C. Cir. 1978); *GEO Specialty Chems., Inc. v. Husisian*, 951 F. Supp. 2d 32, 39 (D.D.C. 2013) ("[T]he value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant.").

With its removal papers, Coca-Cola submitted a sworn declaration by its Sustainability Manager, Alpa Sutaria, explaining that issuance of the injunction requested by Earth Island would force Coca-Cola to incur well more than $75,000 in expenses.  As the declaration explains, if the Court were to issue an "an order enjoining Coca-Cola's conduct [alleged] to be in violation of the [] CPPA," Prayer for Relief, Coca-Cola would be force, at minimum, to (1) remove or modify the "recyclable" or "please recycle" statements that appear on the labels and packages of the vast majority of its products; and (2) locate and remove all statements about Coca-Cola's commitment to sustainability and recycling from its websites, social media accounts and public sustainability reports.  The cost to Coca-Cola would total in the millions, far in excess of the $75,000 jurisdictional requirement.  Dkt. No. 2-4, ¶¶ 4-8.

This is not "sheer speculation," as Earth Island cavalierly contends.  It is common sense, supported by evidentiary proof.  Notably, though it dismisses Coca-Cola's declaration as

insufficient, Earth Island offers no evidence whatsoever to support its contrary position.  The "preponderance of the evidence" thus readily establishes that "the amount-in-controversy requirement has been satisfied."  *Dart*, 574 U.S. at 88.[1]

Earth Island's only argument is that the reach of its proposed injunction is not nationwide or global, but instead would affect only "services offered in the District," so compliance costs should be modest.  Dkt. No. 15-1, at 8.  That is an unrealistic view of the requested relief.  The Complaint takes issue with statements that appear on universally available websites and social media platforms, and in widely published sustainability reports—none of which specifically targets the District of Columbia or its residents.  Compl. ¶¶ 32-56.  Earth Island seeks to muzzle all statements that allegedly violate the CPPA, not just those that are targeted to residents of the District.  Coca-Cola cannot program its website or social media accounts to display unique or different messages to visitors who reside or are located in the District.  The only way to implement the requested relief would be to alter the contents of Coca-Cola's global communications.

The same goes for Coca-Cola's product labeling, which includes several of the challenged statements and would necessarily be impacted by the requested injunction.  As a practical matter, Coca-Cola cannot ensure that the labels of products sold in the District differ from those sold in Virginia, Maryland or any other state.  The only way to redress the purported CPPA violations would be to remove the disputed statements from all of Coca-Cola's labels.  It goes without saying

---

[1] The cases on which Earth Island relies involved vastly different facts and stand in stark contrast to the present circumstances.  *Compare Wexler v. United Air Lines¸* 496 F. Supp. 2d 150, 154 (D.D.C. 2007) (removing defendant offered "no evidentiary support" or "estimate" of the expected costs) and *Inst. for Truth in Mktg v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 89 (D.D.C. 2018) (defendant "may not rely on sheer speculation") *with Organic Consumers Ass'n v. Handsome Brook Farm Grp.*, 222 F. Supp. 3d 74, 77 (D.D.C. 2016) (crediting employee declaration that detailed compliance costs from inventory destruction, label redesign, and a new advertising campaign).

that the cost of that effort would greatly exceed the $75,000 jurisdictional threshold.  And even if it were somehow possible to limit the label changes to products sold in the District, that would not defray the associated costs, which "primarily arise" from the "redesign of graphics on product labels and replacement of product images on Coca-Cola's websites," irrespective of the geographic distribution of the redesigned packaging.  Dkt. No. 2-4 ¶¶ 6-7.

## B.      The Non-Aggregation Principle Does Not Apply

### 1.      There Are No Claims or Plaintiffs to Aggregate

Earth Island's motion to remand rests exclusively on the non-aggregation principle, which does not apply to the injunctive relief Earth Island seeks.  The doctrine is designed to prevent two or more plaintiffs from joining together to bring small-value claims in federal court when they could not individually do so.  *Snyder v. Harris*, 394 U.S. at 335.  This principle is irrelevant to this case because there are no "plaintiffs" aside from Earth Island, and no other claims or interests to "aggregate."   In single-plaintiff cases such as this, courts routinely determine the amount in controversy with reference to the cost to the defendant to comply with an injunction.  *See*, *e.g.*, *Busby v. Capital One, N.A.*, 841 F. Supp. 2d 49, 54 (D.D.C. 2012) (calculating amount in controversy as the cost to defendant where the plaintiff sought to enjoin lender from enforcing a note and foreclosing on his home); *Geo Specialty Chems*, 951 F. Supp. 2d at 39-40 (calculating the amount in controversy in a breach of fiduciary duty suit as the cost to defendant of terminating a business relationship).

The pseudo-representative nature of this case does not alter the analysis.  Earth Island insists that, although it does not seek to ***represent*** any consumer, it seeks injunctive relief "on behalf of" all consumers in the District, and that all of those individuals must be accounted for when calculating the amount in controversy for jurisdictional purposes.  But Earth Island has unequivocally disclaimed any intention to actually represent any of those individuals.  Compl. ¶

26.  While some courts in this District have accepted the argument advanced by Earth Island, the D.C. Circuit has never decided whether the non-aggregation principle applies to the cost of compliance with an injunction in a case such as this.  *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 5 (D.D.C. 2015) ("The D.C. Circuit has not ruled on the proper method for calculating a defendant's injunction costs in representative suits such as this one").  In fact, at least one district court has held, under similar circumstances, that federal jurisdiction was proper based, in part, on the cost of compliance with an injunction under the CPPA.  *Organic Consumers Ass'n v. Hain Celestial Grp., Inc.*, 285 F. Supp. 3d 100, 102 n.2 (D.D.C. 2018) (diversity jurisdiction proper in CPPA case where plaintiff sought "corrective advertising and revised labeling").

Though it has not expressly addressed the question presented here, the D.C. Circuit has ruled that when the injunctive relief sought is indivisible—*i.e.*, it would enjoin a course of conduct or practice—the cost of compliance is not subject to the non-aggregation rule, even if the injunction would benefit a large number of people.  In *Tatum v. Laird*, 444 F.2d 947, 948 (D.C. Cir. 1971), *rev'd on other grounds*, 408 U.S. 1 (1972), members of the U.S. Armed forces, "on behalf of themselves and others similarly situated," challenged an Army surveillance program into civilian political activity and sought an injunction "forbidding future similar activity and destruction of all data" that had been illegally obtained.  The Court considered whether the plaintiffs had satisfied the amount-in-controversy requirement under the federal-question jurisdiction statute, 28 U.S.C. § 1331(a).  *Id.* at 949.  Section 1331(a) at the time contained the same "matter in controversy" language as Section 1332(a) does today.  In interpreting that language, the Court held that "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce," namely, "the value of the right sought to be gained by the plaintiff or ***the cost of enforcing that right to the defendant***." *Id.* at 951 & n.6 (citations and

9

alterations omitted) (emphasis added). That included "the cost to the Army of complying with" the requested injunction.  *Id.* at 951. Notably, the Court did not mention the non-aggregation principle or suggest that the cost to the Army should be divided by the number of servicemembers the injunction would benefit.

In *Committee for GI Rights v. Callaway*, 518 F.2d 466 (D.C. Cir. 1975), the D.C. Circuit again calculated the amount in controversy based on the overall cost of complying with the proposed injunction, without any reference to the non-aggregation principle.   In that case, 18 enlisted members and a public interest organization brought a putative class action, on behalf of themselves and 145,000 other servicemembers, seeking declaratory and injunctive relief against the Army's drug abuse prevention program.  As in *Laird*, the Court considered whether Section 1331(a)'s amount-in-controversy requirement was satisfied.  The D.C. Circuit concluded that it was, based on "the costs that the Army would incur if the plaintiffs prevailed."  *Id.* at 473. To comply with the proposed injunction, the Court observed, the Army would incur various expenses to stop drug inspections, provide administrative hearings and eliminate other aspects of the challenged program.  *Id.*  The Court thus concluded that the amount-in-controversy requirement was met because the anticipated compliance costs "might well exceed" the jurisdictional threshold.

This case is indistinguishable from these precedents.  As in those cases, the requested injunction seeks to restrain a single course of conduct (here, Coca-Cola's disputed advertising and labeling statements), and the cost of complying with such an order would exceed the jurisdictional threshold.  That is all that is required.  Earth Island does not and cannot explain how application of the non-aggregation principle in this instance would be consistent with *Laird* and *Callaway*.

## 2. Earth Island's Requested Injunction Constitutes a "Common and Undivided Interest"

Even if the Court were to ignore Earth Island's express allegations and interpret the Complaint to include additional plaintiffs, the anti-aggregation principle would not apply. The injunctive relief Earth Island seeks—to enjoin allegedly misleading advertising—is a "common and undivided interest," a recognized exception to the non-aggregation principle. *Snyder*, 394 U.S. at 335 (non-aggregation rule does not apply where "two or more plaintiffs unite to enforce a single title or right in which they have a common or undivided interest"); *Nat'l Welfare Rights Org. v. Weinberger*, 377 F. Supp. 861, 866 (D.D.C. 1974) ("[A] common and undivided claim exists when the adversary of the class has no interest in how the claim is to be distributed among the class members.").

Courts across the country follow the precept that, if the relief to be provided by a requested injunction is indivisible—*i.e.*, it "would cost the same whether it was made for just one customer or every customer served by the company"—then the ***total cost of compliance*** is the relevant figure for amount-in-controversy purposes, regardless of how many individuals might potentially benefit. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006).[2] And courts

---

[2] *Accord Lovell v. State Farm Mut. Auto Ins. Co.*, 466 F.3d 893, 898 (10th Cir. 2006) (rejecting argument that value of injunctive relief should be divided among plaintiffs in putative class action where "the costs of compliance running to any single Plaintiff or putative class member would exceed $75,000 because the requested relief would require it to make significant changes to its business practices"); *Katz v. Warner-Lambert Co.*, 9 F. Supp. 2d 363, 364–65 (S.D.N.Y. 1998) (value of injunctive relief measured by cost to defendant where the injunction would cost the same even if only implemented for one plaintiff); *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d 702, 719 (D. Md. 2001) ("[C]ommon sense compels the conclusion that 'the value of the object' of the requested injunctive relief in these cases, which could not be effected without the expenditure of millions of dollars if granted even to one plaintiff, exceeds $75,000."); *Earnest v. General Motors Corp.*, 923 F. Supp. 1469, 1472-73 (N.D. Ala. 1996) (where the court observed that where the equitable relief sought "would benefit the putative class as a whole and not just any individual plaintiff," then "each plaintiff has a common interest in the injunctive and declaratory relief"); *Hoffman v. Vulcan Materials Co.*, 19 F. Supp. 2d 475, 483 (M.D.N.C. 1998) (court considered the defendant's costs of complying with plaintiff's requested injunctive relief and

widely hold that a claim for an injunction against allegedly false or misleading advertising constitutes a "common and undivided interest," because the cost to the defendant would "be the same no matter how many plaintiffs obtained that award." *Tires Prods. Liab. Litig. v. Bridgestone/Firestone, Inc. (In re Bridgestone/Firestone, Inc.)*, 256 F. Supp. 2d 884, 896 (S.D. Ind. 2003) (claim for injunction against "affirmative misrepresentations in the defendants' advertising" was a common and undivided interest); *see also Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 898 (10th Cir. 2006) ("requested relief would require [defendant] to make significant changes to its business practices . . . [and] the compliance cost to any single plaintiff exceeds the requisite amount in controversy"); *Adoure v. Gillette Co.*, No. 05-11177-DPW, 2007 U.S. Dist. LEXIS 2641, at *20 (D. Mass. Jan. 11, 2007) (diversity jurisdiction based on the "cost of corrective advertising in the California market alone" would exceed $75,000 threshold); *Loizon v. SMH Societe Suisse de Microelectronics*, 950 F. Supp. 250, 254 (N.D. Ill. 1996) (injunctive relief in the form of advertising to warn the public about possible radiation amounted to an "undivided interest").

In the specific context of the CPPA, courts have distinguished damages from equitable remedies—such as a claim for disgorgement—that further a "common and undivided" interest and concluded that the latter are not subject to disaggregation. Courts in this District have thus asserted federal diversity jurisdiction in CPPA cases that seek disgorgement, precisely because the cost of the relief sought is the same regardless of the number of potential beneficiaries. *See Beyond Pesticides v. Dr. Pepper Snapple Grp., Inc.*, 322 F. Supp. 3d 119, 122 (D.D.C. 2018) (diversity jurisdiction proper in CPPA case where plaintiff sought disgorgement of profits from allegedly

---

observed that "because the defendant will sustain this loss even if only one plaintiff were to obtain the injunction, this is a case where plaintiffs have an undivided interest in the injunction").

mislabeled apple sauce products); *Williams v. Purdue Pharm. Co.*, No. 02-0556 (RMC), 2003 U.S. Dist. LEXIS 19268, at *12–20 (D.D.C. Feb. 27, 2003) (disgorgement under the CPPA is a common and undivided claim that would exceed $75,000); *see also Mostofi v. Network Capital Funding Corp.*, 798 F. Supp. 2d 52, 55 (D.D.C. 2011) (recognizing that CPPA claims seeking disgorgement could be aggregated).

The result can be no different here.  A single plaintiff, Earth Island, has brought a claim that, if successful, would cause Coca-Cola to incur well in excess of $75,000 in costs to comply with the requested injunction.  This is true whether the injunction would benefit 10 people, 10,000 people, or 10 million people.  Earth Island cannot show that the costs of *complying* with the requested injunction could vary depending on the number of District residents who theoretically might *benefit from* the injunction.  Accordingly, there is no reason to divide Coca-Cola's costs to comply with the requested injunction by the nearly 700,000 people who live in the District of Columbia.  The non-disaggregation principle does not apply.

Earth Island offers no logical reason why this Court calculate the amount in controversy in the arbitrary manner it proposes.   Instead, Earth Island assumes that because *some* courts in the District have applied the non-aggregation principle to injunctive-relief cases such as this one, the law on this issue is "settled."  *See* Dkt. No. 15-1, at 7-9.  Not so.  The decisions in question largely do not address the D.C. Circuit's *Laird* and *Callaway* precedents, and few if any explain how disgorgement constitutes a "common and undivided interest" while an injunction, another form of equitable relief whose value is likewise measured by the cost to the defendant, does not.

The truth of the matter is that the cases Earth Island cites in support of its remand motion are wrongly decided.  In *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 105 (D.D.C. 2008), for example, the court found that the case did not qualify as a "class action" under the Class Action

Fairness Act because it was "asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class)," but inexplicably went on to rule that the complaint involved "separate and distinct claims on behalf of multiple parties" that triggered the non-aggregation principle. *Id.* at 101. The court in *Beyond Pesticides v. Exxon Mobil Corp.*, Civ. Act. No. 20-1815 (TJK), 2021 U.S. Dist. LEXIS 53032 (D.D.C. 2021), applied similarly faulty reasoning, concluding that the claim for injunctive relief was not common and undivided because "members of the public have separate and distinct claims" that could be brought "independently." *Id.* at *6. But the same is true of any claim under the CPPA, including a claim for disgorgement which, as noted above, is *not* subject to non-aggregation. That other plaintiffs could bring the same action does not change the fact that the claim for injunctive relief asserts a single, indivisible interest in preventing further dissemination of alleged false advertising. And in *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 6 (D.D.C. 2015), the court applied the non-aggregation principle precisely because the defendants "d[id] not dispute that plaintiff and the [putative class members] he represents ha[d] separate and distinct claims for relief," as opposed to a "common and undivided interest." *Id.* at 6.[3]

## C. Earth Island's Request for Attorneys' Fees Further Supports Diversity Jurisdiction

### 1. A Reasonable Estimate of Attorneys' Fees Exceeds $75,000

In addition to compliance costs, the attorneys' fees that Earth Island could potentially recover exceed $75,000 and further support diversity jurisdiction. Under the CPPA, attorneys'

---

[3] In the final case on which Earth Island relies, *Organic Consumers Ass'n v. R.C. Bigelow, Inc.* 314 F. Supp. at 350, the court acknowledged that the suit was brought "on behalf of the general public," but proceeded to divide the costs of compliance "among the consumers who" stood to "benefit from" the requested injunction. This approach contradicts the D.C. Circuit's decisions in *Laird* and *Callaway*, and misapplies the non-aggregation principle which, as explained above, is aimed at a different concern, *i.e.*, the aggregation of multiple "separate and distinct" claims that otherwise would not meet the amount-in-controversy threshold for federal court jurisdiction.

fees may be awarded to the prevailing party based on the amount of time reasonably expended, *see* D.C. Code § 28-3905(k)(2)(B), and attorneys' fees "may be counted towards establishing a jurisdictional amount when they are provided for by . . . a statute in controversy." *Parker-Williams v. Charles Tini & Assocs., Inc.,* 53 F. Supp. 3d 149, 153 (D.D.C. 2014). Here, Earth Island's complaint plainly seeks "an order granting Plaintiff costs and disbursements, including reasonable attorneys' fees and expert fees." Compl., Prayer for Relief.

Based on past awards in CPPA cases, it is likely that the fee award here would exceed $75,000 should Earth Island prevail. *See Dart*, 574 U.S. at 87-88. Fee awards in CPPA cases regularly amount to hundreds of thousands of dollars. *See, e.g.*, *Williams* v. *First Gov't Mortg. & Investors. Corp.*, 225 F.3d 738, 745-47 (D.C. Cir. 2000) ($199,340); *Beck* v. *Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 20 (D.D.C. 2014) ($854,623.90); *In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 289 (D.D.C. 2009) ($453,885.31); *Dist. Cablevision L.P.* v. *Bassin*, 828 A.2d 714, 718 (D.C. 2003) ($425,916.25); *Jackson* v. *Byrd*, Civ. No. 01-825, 2004 WL 3249692, at *4 (D.C. Super. Ct. Sept. 2, 2004) ($196,000).

Earth Island's counsel has sought and received similarly sizeable awards. Four years ago, lead counsel Kim Richman sought fees at the rate of $700.00 per hour for himself and $450.00 per hour for members of his team.[4] Even assuming no rate increase(s) between 2017 and the conclusion of this litigation, attorneys' fees accruing at the average of these two rates ($575 per hour) would exceed $75,000 after just 130 hours of work. It would not be surprising if Earth

---

[4] *See* Decl. Kim Richman Supp. Pls.' Mot. Att'ys' Fees, Costs, & Incentive Awards ("Richman Decl.") ¶ 15, *Charvat* v. *Plymouth Rock Energy, LLC*, Civ. No. 15-4106 (E.D.N.Y. Oct. 5, 2017) (requesting a total of $51,056.50), ECF No. 57-2; Suppl. Decl. Kim Richman Supp. Pl.'s Mot. Service Award, Att'ys' Fees & Costs ¶ 19, *Abante Rooter & Plumbing Inc.* v. *N.Y. Life Ins. Co.*, Civ. No. 16-3588 (S.D.N.Y. Oct. 2, 2017), ECF No. 51 ("My billable rate, which has been approved by several courts, is $700.00 an hour").

Island's counsel claimed to have invested that many hours in the litigation *to date*—to say nothing of the fee application that would come at the end of the case if Earth Island were to prevail.

### 2.      Attorneys' Fees Are Not Subject to the Non-Aggregation Rule

Earth Island contends that, like the cost of compliance with an injunction, attorneys' fees must be divided by the number of potential beneficiaries to meet the amount-in-controversy requirement.  While it is true that courts have extended the non-aggregation principle to attorneys' fees in multi-plaintiff cases, it is undisputed that, in this case there is and will be only one plaintiff: Earth Island.  No other individual consumer or member of the general public has retained counsel, and the request for costs and disbursements is made on behalf of Earth Island only, not the general public.  *See* Compl. Prayer for Relief (request for "an order granting ***Plaintiff*** costs and disbursements, including reasonable attorneys' fees") (emphasis added).  What is more, disaggregating fees between the named plaintiff and the general public "underestimate[s] the portion of fees properly attributed to [the plaintiff]" in its role as the initial, and indeed here, the only plaintiff.  *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013).[5] Having made clear that Earth Island is the sole plaintiff, counsel may not turn around and claim that the fees they seek concern work on behalf of clients they do not represent.

## II.    EARTH ISLAND IS NOT ENTITLED TO ATTORNEYS' FEES OR COSTS IN CONNECTION WITH ITS REMAND MOTION

For the reasons set forth above, Earth Island's motion for remand should be denied. However, even if the Court grants the motion, it should deny Earth Island's request for attorneys'

---

[5] Earth Island also argues that attorneys' fees "can be simply set at $0" for "jurisdictional purposes."  This contravenes the well-established principle that the face of the complaint at the time of removal—not any subsequent clarification—determines whether a court may exercise jurisdiction.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) ("The plaintiff's "claim, whether well or ill founded in fact, fixes the right of the defendant to remove.").

fees and costs in connection with the motion.  A plaintiff opposing removal is entitled to attorneys'

fees or costs under 28 U.S.C. 1447(c) only if it can show that "the removing party lacked an

objectively reasonable basis for seeking removal."  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132,

141 (2005).  Conversely, "when an objectively reasonable basis exists, fees should be denied." *Id.*

A defendant's basis for removal is "objectively reasonable" if there is "at least some logical and

precedential force behind it . . . regardless of whether" it "[is] correct."  *Knop v. Mackall*, 645 F.3d

381, 383-84 (D.C. Cir. 2011).

Coca-Cola's arguments in support of diversity jurisdiction easily satisfy the "objectively

reasonable" standard.  Coca-Cola has furnished evidence that it would incur millions of dollars in

costs to comply with the requested injunction, and has cited ample case law from the D.C. Circuit

and elsewhere demonstrating that the non-aggregation principle is inapplicable.

Coca-Cola has also shown that the attorneys' fee award requested by Earth Island will

inevitably exceed the requisite amount in controversy, and has explained why disaggregation of

the potential fee award is unwarranted where, as here, counsel represents a single plaintiff and not

the public at large.  These arguments, all supported by facts and controlling or persuasive case law,

are more than objectively reasonable.  *See Knop*, 645 F.3d at 383 (vacating attorneys' fee award

where defendant's argument for removal had "convinced one federal district court").

Earth Island suggests that Coca-Cola's arguments are "unfounded" because a number of

non-binding decisions support remand.  See Br. 11-12.  But none of the authorities Earth Island

relies upon are controlling.  Indeed, the very courts whose decisions Earth Island cites in support

of remand have unanimously refused to grant attorneys' fees "[g]iven the lack of binding

precedent" on the issues.  *See Beyond Pesticides*, 2021 U.S. Dist. LEXIS 53032, at *8; *Breathe

DC v. Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d 171, 172 (D.D.C. 2017); *see also Food & Water*

*Watch, Inc. v. Tyson Foods, Inc.*, No. 19-cv-2811 (APM), 2020 U.S. Dist. LEXIS 38232, at *17 (D.D.C. Mar. 5, 2020); *Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344, 358 (D.D.C. 2018).

The cases Earth Island cites in which fees have been awarded are readily distinguishable. In *Stein v. American Express Travel Related Services*, 813 F. Supp. 2d 69 (D.D.C. 2011), the defendant removed a CPPA representative action as a "class action" under the Class Action Fairness Act. Coca-Cola did not remove on those grounds. The *Stein* decision is inapposite for an additional reason: the court awarded fees, in part, as a reprimand to the defendants for "several inappropriate, and obviously unpersuasive arguments" and accusations of unethical conduct against opposing counsel. *Id.* at 71 n.1. No such facts or conduct exist here. Similarly, Earth Island cannot support its bid for attorneys' fees with citations to cases in which, contrary to well-established law and controlling precedent, defendants removed without a showing of complete diversity. *Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 181 (D.D.C. 2003); *Burton v. Coburn*, No. CIV.A. 04-965(RBW), 2005 WL 607912, at *1 (D.D.C. Mar. 16, 2005). Earth Island does not dispute, nor could it, that the parties are completely diverse.

## CONCLUSION

By the plain language of the diversity jurisdiction statute, this case is removable to federal court. The parties are citizens of different states, and the amount in controversy readily exceeds $75,000. Only by entertaining the fiction that the costs of complying with the requested injunction somehow depend upon, and must therefore be divided by, the number of potential beneficiaries can the Court conclude otherwise. For the foregoing reasons, Coca-Cola respectfully requests that Earth Island's motion to remand and request for attorneys' fees and costs be denied.

Dated:  September 17, 2021

Respectfully submitted,

_____/s/ Anthony T. Pierce_____
Anthony T. Pierce (D.C. Bar No. 415263)
Miranda A. Dore (D.C. Bar No. 1617089)
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 887-4000
apierce@akingump.com
mdore@akingump.com


_____/s/ Steven A. Zalesin_____
Steven A. Zalesin (Admitted *Pro Hac Vice*)
Jane Metcalf (*Pro Hac Vice* application forthcoming)
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2110
sazalesin@pbwt.com
jmetcalf@pbwt.com

*Attorneys for The Coca-Cola Company*

19

## **CERTIFICATE OF SERVICE**

This is to certify that on September 17, 2021, foregoing was served on all counsel of

record by operation of the Court's CM/ECF system.

                                           /s/ Anthony T. Pierce
                                              Anthony T. Pierce